BALD MOUNTAIN PARK, LTD., A
Georgia Limited Partnership,
Plaintiff–Appellee,

v.

Henry H. OLIVER, Jr., Carol Oliver
Lucas and Kay Oliver Majure,
Defendants–Appellants.

No. 88–8106.

United States Court of Appeals,
Eleventh Circuit.

Jan. 23, 1989.

Charles H. Hyatt, John M. Hyatt, Decatur, Ga., for defendants-appellants.

Michael A. Cole, Vincent, Chorey, Taylor & Feil, John L. Taylor, Jr., Atlanta, Ga., for plaintiff-appellee.

Before RONEY, Chief Judge, COX, Circuit Judge, and MORGAN, Senior Circuit Judge.

MORGAN, Senior Circuit Judge:

This is a suit to quiet title to real property located in Towns County, Georgia. Appellee Bald Mountain Park, Ltd. alleges the disputed property was a portion of a parcel of land which appellee purchased on December 29, 1978 from Cindy's, Inc. ("Cindy's"). Appellants allege in their counterclaim that Cindy's or its predecessor corporation had previously conveyed the disputed property to Hugh Oliver on July 28, 1978, and that they inherited the property from Mr. Oliver. Appellee claims that it has a superior claim to the property both because it recorded its deed of sale before Mr. Oliver's deeds were recorded and because the deeds which purported to convey the property to Mr. Oliver were invalid.

The following facts, as summarized by the district court, are not in dispute: Appellee purchased a tract of land from Cindy's on December 29, 1978, for $812,000.00. Cindy's conveyed its interest in the property to appellee by means of a quitclaim deed. The deed was recorded on December 29, 1978. The physical, metes and bounds, description of the approximately 803.6 acres of property which was recited in the

deed encompassed the 7.77 acres of property whose ownership is disputed in this case. The quitclaim deed, however, excluded from the conveyance "any and all parcels or lots that have been sold by Bald Mountain Park, Inc., Imperial Land Investment Company, Imperial Group, Ltd., or Cindy's since July 27, 1972."

Hugh Oliver died in 1980 and appellants are beneficiaries under his will. On August 20, 1982, two deeds were recorded which each appear on their face to convey the disputed property to Oliver. Both deeds are dated July 28, 1978. One is a quitclaim deed which indicates the grantor is Cindy's, and is signed on behalf of Cindy's by A.L. Roberts, President. The corporate seal of Cindy's was affixed to the deed. The second deed was a warranty deed which indicates Imperial Group, Ltd., d/b/a Imperial Bald Mountain Park is the grantor and is signed on behalf of Imperial Group by Hugh Oliver, Vice President. Imperial Group, Ltd., was the predecessor corporation to Cindy's. The corporation changed its name, with the authorization of the Georgia Secretary of State, on September 7, 1977. Thus, the grantor indicated in the warranty deed was not in fact the record owner of the property on July 28, 1978, when it purported to convey it.

The following facts, as found by the district court, are disputed: Appellee presented evidence via the affidavit of its general partner that when appellee made its December 29, 1978 purchase of land from Cindy's, it did not have any knowledge or notice that any portion of this property had been sold or conveyed to Hugh Oliver nor was Hugh Oliver in possession of the property. Appellants disputed this contention. Two of the appellants submitted personal affidavits which averred that appellee's general partner had told them in 1980 that before appellee made the December 29, 1978 land purchase, he had been aware of the deeds which purported to convey the property to Hugh Oliver. The parties also present conflicting affidavits and evidence concerning who has been in possession of the disputed property from 1978 to the present.

Appellee submitted an affidavit by Artis L. Roberts, who was President of Cindy's during 1978. Roberts avers that he was the corporate officer responsible for conveyance of real estate owned by the corporation. His affidavit reads in part:

Cindy's, Inc. did not sell or convey the disputed property to Hugh Oliver, and never received from Hugh Oliver any consideration with respect to the Quit claim deed. When I was President of Cindy's, Inc., it was the practice of Cindy's, Inc. to presign deeds in blank. The original of the July 28, 1978 warranty deed to Oliver was signed in blank, because I did not sign any completed deed, filled in to name the grantee and describe the property, which conveyed an interest in the property, or any portion thereof, to Hugh Oliver. Hugh Oliver was not an officer of Cindy's, Inc. and had no authority whatsoever to sell or convey title to real property owned by Cindy's, Inc. Hugh Oliver had no authority to complete a deed to convey property from Cindy's, Inc. to himself. The presigned deeds were entrusted to Hugh Oliver only to use by completing the names of bona fide third-party purchasers for value and to convey property only to such persons. This practice was followed because my duties as President of Cindy's, Inc. required extensive out-of-town travel, and I was often available when needed for a closing. This practice allowed Cindy's, Inc. to convey property in my absence without the delay that would have been associated with completing and executing deeds through the mail.

Roberts also avers that Imperial Group, Ltd. did not sell or convey the disputed property to Hugh Oliver and that Hugh Oliver had no authority to convey title to real property on behalf of Imperial Group, Ltd. In response, defendants filed certified copies of several recorded deeds which Oliver apparently signed on behalf of Cindy's and Imperial Group, Ltd. conveying property to persons unrelated to the case.

On January 13, 1988, the United States District Court for the Northern District of Georgia entered an order granting appellee's motion for summary judgment and

dismissing appellants' counterclaim to quiet title. In its order, the trial court ruled that the appellee was not entitled to summary judgment on the basis of its prior recorded deed because of a genuine issue of fact remains as to whether the appellee had notice of the existence of the prior unrecorded deeds. The district court did find, however, that no genuine issue of fact exists with regard to the validity of the warranty and quitclaim deeds to Hugh Oliver.

■ The invalidity of the warranty deed was based upon the fact that the named grantor, Imperial Group, Ltd., was not the record title owner of the property on the date the deed was executed.[1] The invalidity of the warranty deed was conceded by appellants in their response to the summary judgment motion. The district court also found that there is no genuine issue of fact concerning the validity of the deed under which the appellants claim the disputed property.[2] The court ruled that the quitclaim deed is invalid as a matter of law since Hugh Oliver did not have the authority to transfer the property to himself. It is from this ruling, entered on January 20, 1988, that this appeal was taken.

In considering a motion for summary judgment, the district court is required to review the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion. *Sweat v. Miller Brewing Co.,* 708 F.2d 655, 656 (11th Cir.1983). The sole issue in this appeal is whether a genuine issue of fact exists as to the validity of the July 28, 1978 quitclaim deed.

■ As recounted above, the July 28, 1978 quitclaim deed to Hugh Oliver was signed on behalf of Cindy's by Artis L. Roberts, President. Roberts avers that he had the practice of presigning deeds in blank and then entrusting the deeds to

Hugh Oliver solely for completion of conveyances to bona fide third-party purchasers. Roberts avers that he presigned the July 28, 1978 quitclaim deed in blank and that Oliver had no authority to complete the deed in such a way that it conveyed property to himself. According to the district court, the responsive materials which the defendants have submitted, when viewed in the light most favorable to the defendants, may indicate that Oliver had the authority to convey property to third-party purchasers. The district court found, however, that the defendants have failed to present any evidence which contradicts Roberts' statement that Oliver was not authorized to convey property from Cindy's to himself.

It is settled law that a deed presigned in blank cannot be completed without authorization from the grantor. *Etheridge v. Boroughs,* 209 Ga. 634, 635–36, 74 S.E.2d 873 (1953). As properly noted by the court below, "[w]hen a party is given the authorization to convey land he can only exercise this authorization in the manner specified by the one who bestowed it; when the appointed purports to convey property in a manner other than that authorized, the purported conveyance is invalid. *Metropolitan Life Ins. Co. v. Hall,* 191 Ga. 294, 295, 12 S.E.2d 53 (1940), *see also Copelin v. Williams,* 152 Ga. 692, 111 S.E. 186 (1922)."

Appellants argue that a dispute exists as to whether Oliver had authority as of July, 1978 to convey property on behalf of Cindy's. They contend that a fact question is created by the nine deeds submitted in response to the summary judgment motion showing conveyances of real property by Hugh Oliver on behalf of both Imperial Group, Ltd. and Cindy's to third persons. Appellants contend that the deeds impeach

---

1. A deed from an entity that does not possess title or other conveyable interest is inoperative as a conveyance. *See, e.g., Patterson v. Florida Realty & Finance Corp.,* 212 Ga. 440, 443, 93 S.E.2d 571 (1956).

2. The district court rejected appellant's reliance on O.C.G.A. Sec. 14–5–7. The statute provides that the signature of a corporation's president

or vice-president, attestation of the corporation's secretary and corporate seal on a deed constitute conclusive evidence that the signing officers are authorized to execute and deliver the deed. The court concluded: "The July 28, 1978, quit claim deed may arguably fall within this provision but the fact that Artis L. Roberts was authorized to execute the deed is not in dispute."

the testimony of Artis Roberts, who states in his affidavit that Oliver had no authority whatsoever to sell or convey title to real property owned by Cindy's. Appellant's view is that since the credibility of a witness is solely within the province of the jury and Robert's credibility has been put into issue, it was reversible error for the trial court to grant appellee's motion for summary judgment.

Under Rule 56(c) of the Federal Rules of Civil Procedure, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.[3] Recently, in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court held that the requirement that the moving party show initially the absence of a genuine issue concerning any material fact should be understood as requiring the moving party to discharge his burden "by 'showing'—that is, pointing out to the district court—that there is an ab-

sence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. at 2554. Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but "must set forth specific facts showing that there is a genuine issue for trial."[4] *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202, 217 (1986). Mere conclusions and unsupported factual allegations are legally insufficient to create a dispute to defeat summary judgment.[5]

Appellants' argument centers on the purported "impeachment" of the testimony of Artis Roberts with respect Hugh Oliver's authority to convey property. Roberts states unequivocally in his affidavit that "Hugh Oliver had no authority to complete a deed to convey property from Cindy's to himself." The only evidence submitted by appellants to impeach Mr. Robert's testimony are the nine deeds which indicate that Oliver attempted to exercise the authority to convey property on behalf of Imperial, Ltd. and Cindy's to third parties.[6] The deeds, however, fail to impeach Robert's testimony that Oliver was not authorized to

3. Rule 56(c) provides:
   The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

4. Rule 56(e) provides:
   Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is

   made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

5. As the Supreme Court stated in *Celotex:*
   One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose. 477 U.S. at 323–24, 106 S.Ct. at 2553–54.

6. Appellants seem to rely upon the presumption that since Hugh Oliver signed other deeds in the name of Cindy's, *ipso facto* he had the authority to sign the deeds to convey property on behalf of Cindy's. This presumption does not follow. But even assuming that Oliver had some authority to convey property for Cindy's, his authority could not be exercised in a manner inconsistent with the terms under which it was bestowed. *See Metropolitan Life Ins. Co.,* 191 Ga. 294, 12 S.E.2d 53.

complete a deed to convey property from Cindy's to himself. "In passing upon a motion for summary judgment, a finding of fact which may be inferred but not demanded by circumstantial evidence has no probative value against positive and uncontradicted evidence that no such fact exists." *Brewer v. Southeastern Fidelity Ins. Co.*, 147 Ga.App. 562, 564, 249 S.E.2d 668, 670 (1978) (citations omitted).

In sum, appellants have failed to present any direct testimony or other material evidence to dispute the testimony of Artis L. Roberts that Hugh Oliver had no authority to convey property on behalf of Cindy's to himself. Thus, appellants have not demonstrated a genuine issue of material fact concerning the validity of the purported conveyance to Hugh Oliver. Accordingly, appellee is entitled to a judgment as a matter of law, and the district court's grant of appellee's motion for summary judgment is hereby AFFIRMED.