**In the Matter of Leon F. RING, Sue C. Ring, Debtor.**

**BARNETT BANK OF SOUTHEAST GEORGIA, N.A., Plaintiff,**

v.

**TRUST COMPANY BANK OF SOUTHEAST GEORGIA, N.A., Defendant.**

**Bankruptcy No. 93–20689. Adv. No. 94–2016.**

United States Bankruptcy Court, S.D. Georgia.

Feb. 21, 1995.

Mark Johnson, Kristi Harrison, Brunswick, GA, for plaintiff.

## MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

LAMAR W. DAVIS, Jr., Chief Judge.

This proceeding comes before the court on Plaintiff's Motion for Summary Judgment. After considering the parties' pleadings, the record in the file and applicable authorities, I conclude that Plaintiff's motion will be granted in part and denied in part.

### FACTUAL BACKGROUND

On October 27, 1993, Debtors, Leon F. and Sue C. Ring, filed a petition under Chapter 7 of the Bankruptcy Code. At the time they filed their petition, Debtors owned real property in Wayne County, Georgia. Defendant, Trust Company Bank of Southeast Georgia, N.A., held a first-priority security deed in a portion of this property, which secured a debt of approximately $37,855.84. Plaintiff, Barnett Bank of Southeast Georgia, N.A., held a second deed in the same property, which secured a debt of approximately $54,093.26. On October 29, 1993, Defendant filed a Motion for Relief from Stay in Debtors' case. The Motion prayed for relief from the automatic stay to allow Defendant to pursue its state law remedies against the property. Debtors, by and through their attorney, consented to Defendant's Motion.

At the initial hearing on the Motion, held January 4, 1994, the Chapter 7 Trustee informed the court that Plaintiff had yet to file a proof of claim in Debtors' bankruptcy case, and as a result, the Trustee was unable to determine whether he would abandon the property as being burdensome to the estate. Accordingly, the hearing on the motion was continued to allow Defendant and the Chapter 7 Trustee the opportunity to determine whether there was any equity in the property after considering Plaintiff's claim.

The continued hearing on Defendant's Motion for Relief from Stay was scheduled for March 1, 1994, in Brunswick, Georgia. On February 2, 1994, however, Defendant's attorney began advertising the property for foreclosure in the *Press Sentinel*, the legal organ in Jesup, Wayne County, Georgia. The advertisement ran again on February 9, 16 and 23, of 1994, even though relief from stay had not been granted.

By the time of the continued hearing, Plaintiff had filed its proof of claim establishing that it was secured in the amount of $54,093.26. Defendant represented to the court that, because the value of the property was somewhere within the range of $58,000.00 to $69,000.00 and the debt encumbering the property was approximately $91,949.10, the Chapter 7 Trustee had indicated his intention of abandoning the property as being burdensome to the estate.[1] Based upon that representation, as well as the fact that Debtor's attorney had consented to Defendant's Motion, this court entered an Order dated March 1, 1994, lifting the automatic stay to allow Defendant to proceed with its state law remedies against the property.

Having advertised the property for foreclosure prior to receiving relief from stay, Defendant proceeded to conduct the foreclosure sale of the property on the same date that the stay was lifted, March 1, 1994. Plaintiff did not appear at the sale and the property was sold to the highest bidder for $40,600.00. Thus, the proceeds of the sale were sufficient to cover only Defendant's interest in the property.

On April 20, 1994, Plaintiff initiated the instant adversary proceeding against Defendant. In its Complaint, Plaintiff avers that Defendant violated the automatic stay of section 362(a) of the Bankruptcy Code when it advertised the property for foreclosure on February 2, 9, 16 and 23, and that this violation operated to the detriment of Plaintiff because it was unable to protect its interest in the property at foreclosure. Plaintiff seeks, under sections 362(h) and 105 of the Code, damages and other unspecified relief. In its Answer, filed May 27, 1994, Defendant sets up a number of defenses, including

---

1. Although it appears upon review of Debtors' case file that the Trustee never formally abandoned the property, he was served with notice of the hearing and did not appear to oppose Defendant's motion for relief.

Plaintiff's lack of standing under section 362 and the equitable principle of laches, arising from Plaintiff's failure to attend the foreclosure sale and protect its interest.

On June 22, 1994, Plaintiff filed the Motion for Summary Judgment presently before the court. Plaintiff asserts in the Motion that it is entitled to summary judgment on the issue of whether Defendant violated the automatic stay when it advertised the property for foreclosure, as well as the issue of whether it has standing to complain about Defendant's violation of the stay. Plaintiff reserves the assessment of damages for a subsequent evidentiary hearing.

In its response to Plaintiff's Motion, Defendant contends that its advertisement of the property for foreclosure did not violate the stay, and that, even if it did, Plaintiff, as a creditor in Debtor's bankruptcy case, does not have standing to complain about the violation. Accordingly, Defendant requests that all claims against it be dismissed.

### CONCLUSIONS OF LAW

Bankruptcy Rule 7056 incorporates Rule 56 of the Federal Rules of Civil Procedure, which provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of showing the absence of any genuine issue of material facts. *Bald Mountain Bank, Ltd. v. Oliver,* 863 F.2d 1560 (11th Cir.1989). The movant should identify the relevant portions of the pleadings, depositions, answers to interrogatories, admissions, and affidavits to show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The moving party must support its motion with sufficient evidence and "demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute ...". *United States v. Twenty (20) Cashier's Checks,* 897 F.2d 1567, 1569 (11th Cir.1990) *(quoting Clemons v. Dougherty County, Ga.,* 684 F.2d 1365, 1368–69 (11th Cir.1982)).

Once the movant has carried its burden of proof, the burden shifts to the non-moving party to demonstrate that there is sufficient evidence of a genuine issue of material fact. *United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1438 (11th Cir.1991). The non-moving party must come forth with some evidence to show that a genuine issue of material fact exists. *Id.* The trial court should consider "all the evidence in the light most favorable to the non-moving party." *Rollins v. Tech South, Inc.,* 833 F.2d 1525, 1528 (11th Cir.1987).

■ Defendant's contention that it did not violate the automatic stay when it advertised the property for foreclosure is untenable. Advertising for foreclosure is clearly the sort of creditor action that is stayed by sections 362(a)(1), (3), (4) and (5).[2] Thus, Defendant's action in advertising the property for foreclosure prior to obtaining relief from stay violated the stay, and "[a]ctions taken in violation of the automatic stay are void and without effect." *Borg–Warner Acceptance Corp. v. Hall,* 685 F.2d 1306, 1308 (11th

---

2. Section 362(a), in relevant part, provides:
 (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, ... operates as a stay, applicable to all entities, of—
 (1) the commencement or continuation, including the issuance or employment of process, of a judicial administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; ...

 (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
 (4) any act to create, perfect, or enforce any lien against property of the estate;
 (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title ...
 11 U.S.C. §§ 362(a)(1), (3), (4), (5).

Cir.1982).[3] Plaintiff is entitled to summary judgment on this issue.

■ Plaintiff's standing to obtain redress for Defendant's violation of the stay, however, poses a more difficult question. A plaintiff must overcome a number of constitutional and "prudential" hurdles in order to gain standing in federal court. Under Article III of the Constitution, a plaintiff must demonstrate that (1) it suffered some actual or threatened injury as a result of the defendant's allegedly illegal conduct; (2) that its injury can be fairly traced to the illegal conduct; and (3) that the relief the plaintiff requests of the court will likely redress its injury. *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982); *E.F. Hutton & Co., Inc. v. Hadley,* 901 F.2d 979, 984 (11th Cir.1990); *Chiles v. Thornburgh,* 865 F.2d 1197, 1204 (11th Cir.1989).

■ Plaintiff clearly satisfies these minimum constitutional standing requirements. The allegation that Plaintiff lost its security interest in the subject property as a result of Defendant's actions in violation of the automatic stay is a palpable injury traceable to Defendant's wrongful conduct. Moreover, the injury is one that can likely be redressed by this court. *See Matter of Pointer,* 952 F.2d 82, 85 (5th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 3035, 120 L.Ed.2d 904 (1992).

■ This conclusion does not, however, end the inquiry. In addition to these basic constitutional requirements, a plaintiff must also "demonstrate that prudential considerations do not restrain the trial court from hearing the case." *Hadley,* 901 F.2d at 984. The presence of one or more of the following considerations prevents judicial action despite the fact that a plaintiff has met the minimum requirements for constitutional standing: "(1) assertion of third party's rights, (2) allegation of a generalized grievance rather than an injury particular to the litigant, and (3) assertion of an injury outside the zone of interests of the statute or constitutional provision." *Id.* at 984–85 (citations omitted).

■ The first two considerations are not present in this proceeding. Plaintiff is asserting its own rights (as opposed to the Debtors' or Trustee's) under the automatic stay and is alleging its own injury (the loss of its security interest) as a result of Defendant's violation of the stay. The third consideration, however, raises the difficult question of whether Plaintiff's injury falls within the zone of interests protected by the Bankruptcy Code. Can the Bankruptcy Code be properly understood as granting Plaintiff, a creditor in a Chapter 7 bankruptcy case, the right to seek judicial relief in this court for Defendant's alleged violation of the automatic stay?[4] Put another way, does Plaintiff have "statutory standing" under the Bankruptcy Code. *See Matter of Pointer,* 952 F.2d at 85–86. For the reasons that follow, I conclude that Plaintiff lacks standing to recover damages under Section 362(h), but does have standing to seek other relief, including actions to initiate contempt proceedings or to seek a declaration that Defendant's foreclosure is void.

■ As to the former, Section 362(h) is the only provision within the Code that specifically provides a remedy for a violation of the stay. Added to the Code in 1984, it provides that "[a]n *individual* injured by any willful violation of a stay provided by [section 362] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

---

**3.** *See also In re Albany Partners, Ltd.,* 749 F.2d 670, 675 (11th Cir.1984); *Matter of Growth Development Corp.,* 168 B.R. 1009, 1013 (Bankr. N.D.Ga.1994).

**4.** *See Warth v. Seldin,* 422 U.S. 490, 500, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975), wherein the Supreme Court observed:

[T]he source of the plaintiff's claim to relief assumes a critical importance with respect to the prudential rules of standing that, apart from Art. III's minimum requirements, serve to limit the role of the courts in resolving public disputes. Essentially, the standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting a person in the plaintiff's position a right to judicial relief.

11 U.S.C. § 362(h) (emphasis added). Section 362(h) thus creates a private right of action for an "individual" who is injured by a willful violation of the stay. The term "individual," however, is limited to natural persons and does not include corporate entities such as Plaintiff. *See In re Georgia Scale Co.*, 134 B.R. 69, 72 (Bankr.S.D.Ga.1991) (Dalis, J.).[5] Thus, while section 362(h) might arguably extend to creditors who are natural persons,[6] it is clearly unavailable to Plaintiff as a source of standing. I therefore conclude that Plaintiff lacks standing to recover damages under Section 362(h).

██ Anticipating this conclusion, Plaintiff argues that this court is nevertheless empowered under section 105[7] of the Code to fashion an appropriate remedy for the injury that it suffered as a result of Defendant's violation of the stay. It is true, as Judge Dalis noted in *Georgia Scale*, that "[t]he bankruptcy court, pursuant to its power of civil contempt, may afford corporate debtors an appropriate remedy for a violation of the stay." *In re Georgia Scale Co.*, 134 B.R. at 72 (emphasis added).[8] Moreover, this court has previously noted that bankruptcy courts possess "the inherent power to enforce obedience of their lawful orders issued in connection with the proceedings over which [the courts] had subject matter jurisdiction."[9] This principle has led a number of lower courts to conclude that a corporate creditor does have standing to invoke a bankruptcy court's contempt power under section 105:

> Notwithstanding [the secured creditor's] inability to recover under section 362(h), it may institute a contempt motion against the Bank under Bankruptcy Rule 9020 for discretionary relief which may be appropriately awarded by the Court. That avenue of relief is available to debtors and prepetition creditors who are not natural persons. The civil contempt powers of the Bankruptcy Court in core matters have been upheld by the substantial majority of circuits and other courts which have ruled on the issue.[10]

These courts look, at least in part, to the following passage from the legislative history to section 362(a) as support for the conclusion that creditors are an intended beneficiary of the stay and therefore have standing to complain of its violation:

> The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against debtor's property. Those who acted first would obtain payment of their claim in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally.

H.R.Rep. No. 95–595, 95th Cong., 2nd Sess. 340 (1978), U.S.Code Cong. & Ad.News 1978,

---

**5.** *Accord In re Goodman*, 991 F.2d 613, 619 (9th Cir.1993); *In re Chateaugay Corp.*, 920 F.2d 183, 184–87 (2d Cir.1990). *Contra In re Atlantic Business and Community Dev. Corp.*, 901 F.2d 325, 329 (3rd Cir.1990); *Budget Service Co. v. Better Homes of Virginia, Inc.*, 804 F.2d 289, 292 (4th Cir.1986).

**6.** At least one court has concluded that the right of action in section 362(h) extends to individual creditors. *See Homer National Bank v. Namie*, 96 B.R. 652, 655 (W.D.La.1989).

**7.** Section 105, in relevant part, provides:
(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to

enforce or implement court orders or rules, or to prevent an abuse of process.
11 U.S.C. § 105(a).

**8.** *See also In re Skinner*, 917 F.2d 444, 447 (10th Cir.1990).

**9.** *Matter of Lemco Gypsum, Inc.*, 95 B.R. 860, 863 (Bankr.S.D.Ga.1989) (*quoting In re Miller*, 81 B.R. 669, 675 (Bankr.M.D.Fla.1988)), *rev'd on other grounds*, 910 F.2d 784 (11th Cir.1990).

**10.** *In re Prairie Trunk Railway*, 125 B.R. 217, 222 (Bankr.N.D.Ill.1991), *aff'd sub nom*, 173 B.R. 146 (N.D.Ill.1992). *See also In re Prairie Trunk Railway*, 112 B.R. 924, 929–30 (Bankr.N.D.Ill. 1990) (same case, earlier stage in proceedings); *Matter of Reserves Development Corp.*, 64 B.R. 694, 699–700 (W.D.Mo.1986), *rev'd on other grounds*, 821 F.2d 520 (8th Cir.1987). *Contra In re Silverman*, 42 B.R. 509 (Bankr.S.D.N.Y.1984); *In re Stivers*, 31 B.R. 735 (Bankr.N.D.Cal.1983).

pp. 5787, 6297.[11]

Clearly, creditors do benefit from the automatic stay, at least to the extent that they know that other creditors are not getting a "head start" in the pursuit of state law remedies against a debtor and his property. Or, perhaps it is more accurate to say that a creditor honors the stay with the expectation that it is not losing ground to other creditors because the bankruptcy court will not allow a violation of the stay to stand and will punish any party that violates it. This is the sort of *quid pro quo* that this court believes is implicit in the operation of the automatic stay. Recognizing the standing of a corporate creditor to call a contemptuous violation of the stay to the court's attention when the creditor has suffered injury therefrom is in furtherance of the statutory scheme. Unlike section 362(h) and its more limited grant of standing to bring a damage action, there are no "prudential" considerations arising from any statutory limitation which suggests that a creditor lacks standing to initiate a contempt proceeding. Such an action does not merely assert a third party's rights or a generalized grievance but, rather, seeks to punish an act which does violence to the essential fabric of the Bankruptcy Code, and which has resulted in particularized harm to the complaining creditor. I can conceive of no reason to deprive such a party of standing when Congress has not expressly done so.

Denying a corporate creditor standing to initiate contempt proceedings would have at least two unfortunate consequences. First, it would suggest that, where, as in this case, neither the debtor nor the trustee has any economic interest in the subject property, a creditor could proceed against the property in violation of the stay with impunity because the one party that has an incentive to complain of the violation (a creditor whose interest in the property has been harmed) is without standing to call the violation to the court's attention. Second, it creates a facially anomalous result in that, even though a violation of the automatic stay has occurred, and even though the actions taken in the violation stay are void *ab initio*, a creditor who is adversely affected by that action nevertheless is without standing to seek redress in the very forum established to enforce the statute that created the automatic stay. Because the automatic stay is perhaps the central protection afforded under the Bankruptcy Code, a result which leaves parties with rights arising out of its interposition without affording a remedy in this court is a hollow promise indeed. I therefore conclude that, while Plaintiff is without standing to recover damages from Defendant under section 362(h), it does have standing to initiate a civil contempt proceeding and seek compensation for its damages.

 Plaintiff may elect to pursue this course, however, as I construe the pleadings, they are not specific enough to meet the procedural requirements of Rule 9020 of the Federal Rules of Bankruptcy Procedure. It is possible that Plaintiff will elect not to seek to have Defendant cited for contempt, based upon an insufficiency of the evidence to meet the higher burden of proof required to show contempt than that which is necessary to prove a willful violation of the stay under section 362(h),[12] or perhaps for other reasons.

---

11. See e.g., *Matter of Reserves Development Corp.*, *supra*, 64 B.R. at 699; *In re Prairie Trunk Railway*, *supra*, 112 B.R. at 928. The court is aware that both *Reserves Development Corp.* and *Prairie Trunk Railway* can be distinguished from the present proceeding because the debtors in both filed under Chapter 11. Chapter 11 contains section 1109(b), which provides:

> A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

11 U.S.C. § 1109(b). Thus, it can be argued that section 1109(b) provides statutory standing where it does not otherwise exist, and a creditor in a Chapter 11 case would therefore have standing to complain of a violation of the stay. The Court in *Reserves Development Corp.* expressly relied upon section 1109(b) in part, *see* 64 B.R. at 699–700, while the court in *Prairie Trunk Railway* did not. *See also In re Goodman*, 991 F.2d 613, 618–19, n. 1 (9th Cir.1993).

12. Civil contempt sanctions for a violation of the stay are generally thought to require an element of maliciousness or bad faith. *See e.g., In re Chateaugay Corp.*, 920 F.2d 183, 184–87 (2d Cir. 1990). Thus, if a party has a good faith argument and belief that its actions were not in violation of the stay, civil contempt sanctions may not be appropriate.

That is Plaintiff's decision to make. I will not take it upon myself to construe its prayers for "other relief" so broadly as to encompass a request for a citation for contempt.

■■■■■ Alternatively, Plaintiff could seek a declaration as to the validity of its own lien based upon the effect that Defendant's void foreclosure advertisements had upon its foreclosure. Plaintiff's standing to seek this relief is an open question in this Circuit. While Plaintiff has not expressly prayed for a determination of the extent, validity and priority of its lien under Rule 7001, I hold that it has standing to do so despite authority to the contrary in the Fifth and the Ninth Circuits. Both Courts of Appeal have concluded that a creditor is without standing to avoid transfers of property made in violation of the stay. *See Matter of Pointer*, 952 F.2d 82, 85 (5th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 3035, 120 L.Ed.2d 904 (1992); *In re Franck*, 19 F.3d 1440, 1994 WL 93169, slip op. (9th Cir. March 23, 1994);[13] *In re Pecan Groves of Arizona*, 951 F.2d 242 (9th Cir.1991).[14]

The issue before the Court in *Pointer* was whether a secured creditor had standing to seek avoidance of tax liens that had attached to its collateral post-petition. The creditor contended that the attachment of the liens violated the automatic stay and that they were, therefore, subject to avoidance. The Fifth Circuit, however, did not reach the issue of avoidance because it held that the secured creditor lacked statutory standing under the Bankruptcy Code to attack the liens as being violative of the stay. *Pointer*, 952 F.2d at 83.

In analyzing the creditor's standing under the Code, the Court first noted that section 362(h) was unhelpful to the creditor because she was seeking avoidance of the liens rather than damages for violation of the stay. *Id.* at 86. The Court instead focused upon section 549 of the Code, which, in relevant part, provides that "the *trustee* may avoid a transfer of property of the estate—(1) that occurs after the commencement of the case; and ... (2)(B) that is not authorized under this title or by the court." 11 U.S.C. § 549(a) (emphasis added). Observing that the attachment of a lien was clearly a "transfer" of property under 11 U.S.C. § 101(50), the Court concluded that the section 549 reserves the power to avoid an unauthorized post-petition transfer to the trustee or debtor-in-possession.[15] *Id.* at 87.

■■■■■ The Fifth Circuit based its decision upon section 549 of the Code, which plainly grants the right to avoid an unauthorized post-petition transfer exclusively to the trustee or debtor-in-possession. In the Fifth Circuit, however, actions in violation of the automatic stay are deemed voidable rather than void, and must, therefore, be affirmatively challenged in order to be set aside.[16] As a result, one must look to the Code to determine who, if anyone, is vested with authority to avoid. In Chapter 7 that person, clearly, is the trustee.[17] In the Eleventh Circuit, on the other hand, actions in violation of the stay are, as set forth above, void

---

**13.** This decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Thus, under Ninth Circuit Rule 36–3, this "unpublished" opinion has no precedential value within the Ninth Circuit. Nevertheless, it has been published on WESTLAW, and this court feels compelled to briefly review the decision as an amplification of the Ninth Circuit's holding in *Pecan Groves*.

**14.** *See also In re Brooks*, 79 B.R. 479, 481 (9th Cir. BAP 1987) ("[I]f the debtor or the trustee choose not to invoke the protections of § 362, no other party may attack any acts in violation of the automatic stay."), *aff'd*, 871 F.2d 89 (9th Cir.1989).

**15.** The Court did note, however, that a creditor could move the bankruptcy court for authoriza-

tion to act on behalf of the trustee and thereby gain standing to seek avoidance of a transfer in violation of the stay. *Pointer*, 952 F.2d at 88.

**16.** *See Picco v. Global Marine Drilling Co.*, 900 F.2d 846, 850 (5th Cir.1990).

**17.** Section 549(a) provides:

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—
(1) [made] that occurs after the commencement of the case; and
(2) (A) that is authorized only under section 303(f) or 542(c) of this title; or (B) that is not authorized under this title or by the court.

11 U.S.C. § 549(a).

*ab initio.* Such acts are deemed "without effect" and are rendered an absolute nullity. The lack of efficacy of the act which violates the stay is not dependent on a trustee's strong arm avoidance powers. However, because the parties' rights must still be adjudicated in some forum, I hold that any party with a cognizable interest in the subject property whose interests have been harmed by the act is within the zone of interests protected by the statute and has the requisite standing to obtain a declaratory judgment under Bankruptcy Rule 7001. Arguably, even the Fifth Circuit recognized a creditor's right to seek this form of relief. *Pointer*, 952 F.2d at 89.

Admittedly, the Ninth Circuit's decision in *Franck* poses substantial difficulty in arriving at this conclusion. It is perhaps the case most squarely on point of any of the decisions that have been reviewed in connection with the formulation of this opinion. In *Franck*, a creditor holding a second-priority deed of trust against certain real property in bankruptcy received relief from the automatic stay to foreclose on its deed. The creditor holding the first deed of trust, however, proceeded to foreclose on the property without receiving relief from stay. This prompted the second deed holder to bring an action in the bankruptcy court seeking a declaration that the foreclosure sale was void because it violated the automatic stay.

The Ninth Circuit concluded that, although the first deed holder's foreclosure in violation of the stay was void, the second deed holder did not have standing to bring an adversary proceeding to attack the creditor's violation of the stay. *Franck*, 1994 WL 93169, slip op. at 2–3. The Court reasoned that, even though the second deed holder had constitutional standing, it did not, under the Court's previous decision in *Pecan Groves*, have standing under the Bankruptcy Code because it was not an "designated" or "legal" beneficiary of the stay imposed by section 362(a). *Id.*

*Franck* is, as noted *supra* note 13, an "unpublished" opinion, and the Ninth Circuit rule under which it was promulgated states that the case has no precedential value. I therefore give the decision little weight.

With regard to the Court's published decision in *Pecan Groves*, on which *Franck* relied, close scrutiny of the facts underlying the case reveals that it is not particularly persuasive as to the issue of a creditor's standing to avoid a transfer in violation of the stay. The debtor in the case held a piece of property that was encumbered by a first mortgage held by John Hancock, as well as a second mortgage held by an individual named Skousen. The debtor filed a petition under Chapter 11, and Skousen foreclosed on the second mortgage and bid the property in without receiving relief from stay. This occurred on August 23, 1982. Subsequently, the bankruptcy court granted authority to another creditor, Tilley, to extend post-petition financing with the proviso that it would be granted a second mortgage behind John Hancock and ahead of Skousen. The Chapter 11 case was subsequently dismissed, and an involuntary Chapter 7 was filed to halt a planned foreclosure by John Hancock. In December 1983, Skousen sold the property under color of his title derived from the bid-in at the August 23, 1982, foreclosure sale. The involuntary case was subsequently dismissed and the debtor filed a voluntary Chapter 7. The Chapter 7 trustee then filed an action in the voluntary case seeking a declaration that Skousen's August 1982 foreclosure sale was void, that the subsequent transfer of the property by Skousen was a fraudulent transfer, and that title to the property should be quieted in the estate of the debtor. Two creditors, Tilley and B & C Equities, intervened in the adversary proceeding on the side of the Chapter 7 trustee. Both Tilley and B & C Equities had become creditors of the debtor by buying claims against it from other creditors.

The bankruptcy court held that the trustee and the intervening creditors could not prevail because the property had been bought from Skousen by a good-faith purchaser for value and because laches precluded the claims. The intervening creditors decided to appeal the court's ruling even though the trustee had decided not to pursue an appeal. The Bankruptcy Appellate Panel affirmed the bankruptcy court's ruling on the merits of the action and also held that the creditors

were without standing to appeal the ruling. The precise issue decided by the Court of Appeals was whether the creditors had standing to appeal from an adverse ruling rendered in the adversary proceeding that the Chapter 7 trustee had initiated. The creditors argument before the Court was that the purpose of the automatic stay was to protect both the debtor and the debtor's creditors, thus giving them standing to appeal. The Court, however, disagreed:

> The trustee is charged with the administration of the estate for the debtor's and creditor's benefit. Allowing unsecured creditors to pursue claims the trustee abandons could subvert the trustee's powers. Granting claimants like [these creditors] standing will overburden the bankruptcy courts with litigation ... We therefore hold that a creditor has no independent standing to appeal an adverse decision regarding a violation of the automatic stay.

*Pecan Groves*, 951 F.2d at 245.

In reaching this conclusion, the Court relied heavily upon its previous decision in *In re Globe Inv. & Loan Co. Inc.*, 867 F.2d 556, 560 (9th Cir.1989), wherein it had held that "*property owners* have no standing to challenge the sale by the bankrupt's trustee of the debtor's interest in that property in violation of the stay." (emphasis added). The *Globe* decision rested on the rationale that the stay does not protect the rights of "outside parties." The Court reasoned in *Globe* that, although the plaintiffs purported to be creditors of the estate, they were, in reality, co-owners of the property along with the debtor and were merely acting, adverse to the estate, to protect that ownership interest. *Id.* The *Pecan Groves* court extended that rationale, erroneously I believe, to a *bona fide* lienholder, somehow equating a lienholder with a co-owner (an "outside party") asserting interests adverse to the estate. Without further explanation, creditors were denied "standing in a bankruptcy proceeding to challenge actions as violative of the stay." *Pecan Groves*, 951 F.2d at 246. Thus, although the bankruptcy court decision was founded strictly on the merits of the case, the BAP interjected the issue of standing and the Ninth Circuit affirmed solely on the basis of lack of standing. The rationale for its conclusion, quoted above, however, is not compelling when applied to the interests of a lienholder and I will not follow it in the absence of direction from a reviewing court in the Eleventh Circuit.[18]

▪▪▪▪ Simply stated, I do not view a *bona fide* second lienholder, Plaintiff in this case, as an "outside party" with an interest "adverse to the estate." The estate is not limited merely to what is left for the benefit of unsecured creditors in a case; rather, it encompasses all legal and equitable interests of the debtor. 11 U.S.C. § 541. The debtor's interest may be subject to claims of secured or priority creditors but the existence of secured and priority claims does not strip property of its character as property of the estate. Rather, it is property in which both the estate and a lienholder have an interest. The trustee is charged with administering that property just as the trustee must administer unencumbered property. Lienholders are not "outside parties" but

---

**18.** The Ninth Circuit seemed concerned both in *Globe* and in *Pecan Groves* with the idea that the plaintiffs, while facially acting as creditors, were in reality acting in a way that was adverse to the interest of the estate. In *Pecan Groves*, this is illustrated by the fact that Tilley claimed an interest in this property as the holder of a second deed to secure debt based on advances it made under court approval. Unfortunately for Tilley, no deed to secure debt was ever executed, although the court had authorized the parties to do so. Because Tilley's secured status was clearly subject to attack by a Chapter 7 trustee, or for other reasons, Tilley had obtained assignments of claims held by other parties against *Pecan Groves*. Moreover, a partnership, of which Tilley was a general partner, was attempting to purchase the property if the real estate could be recovered for the benefit of the estate. On these facts, it seems that the Ninth Circuit may have been affected by what it saw as a manipulation of the process on the part of a "creditor" which had an arguably avoidable secured claim and which was purchasing claims in order to bootstrap itself into a position where it could set aside the sale in order to obtain the same property for its personal benefit. Because of the convoluted history of the case and the apparent unclean hands of the parties which were attempting to keep litigation going, despite an adverse decision and despite the fact that the trustee refused to pursue the appeal, I think it is erroneous to read *Pecan Groves* as broadly as the language admittedly can be interpreted.

rather are participants in the administration of the estate. They are specifically vested with a position in the hierarchical distribution scheme of 11 U.S.C. Section 725 and are therefore intimately concerned with the orderly liquidation of estate property and with the full protection of their vested, *in rem,* rights. In no sense can lienholders be dismissed as mere "outside parties" in the same sense that a non-debtor co-owner of property was classified by the court in *Globe.*

 Because of the clearly distinguishable factual and legal bases on which both *Pointer* and *Pecan Groves* rest, I conclude that a holder of a lien in property which has been transferred in violation of the automatic stay has standing to seek a declaratory judgment that such transfer is void *ab initio,* as an element in obtaining a determination of the extent, validity and priority of its lien pursuant to Bankruptcy Rule 7001. No prudential consideration militates against this Court entertaining such an action. It is not clearly outside the zone of interests of the statute and is not expressly denied by any statutory provision.

 Again, however, that specific relief has not been pled in this case. Plaintiffs generic prayer for "other relief" is not a proper vehicle for the Court to develop the Plaintiffs theory of recovery or plead its case. This point is not purely an academic one, despite my ruling that Plaintiff's Motion for Summary Judgment will be granted on the issue of whether a violation of the stay has occurred. This is true, not only because Plaintiff has not specifically asked for a determination of the validity of its second mortgage, but because Defendant has pled the affirmative defense of laches, which defense has not been pierced in the summary judgment record. Furthermore, there may be parties—subsequent purchasers and/or lenders—not presently before the Court, in whose absence this potential relief cannot be addressed because of due process concerns, or due to defenses available only to them (i.e., *bona fide* purchaser status, etc.). For legal or tactical reasons, a plaintiff may elect not to pursue a particular theory of recovery. Plaintiff may also elect to pursue a state-law damage action in state court based upon the fact that Defendant's foreclosure advertisements are invalid.

As to the specific relief sought in Plaintiff's Complaint, damages under section 362(h), Plaintiff lacks standing. However, because generic "other relief" was requested and because Plaintiff's Motion for Summary Judgment asks for a determination of its standing, I have attempted to deal with this most confusing question both as to the relief expressly prayed for and relief which might be contemplated under the more general prayers for relief.

### ORDER

Pursuant to the foregoing Findings of Fact and Conclusions of Law, IT IS THE ORDER OF THIS COURT that the Motion for Summary Judgment of Plaintiff, Barnett Bank of Southeast Georgia, N.A., is hereby GRANTED in part and DENIED in part. The Motion is GRANTED on the issue of whether Defendant violated the automatic stay when it ran its foreclosure advertisements prior to obtaining relief from the stay. The Motion is also GRANTED on the issue of whether Plaintiff has standing to seek to hold Defendant in contempt or to seek a declaration of the extent, validity and priority of its lien. The Motion is DENIED on the issue of whether Plaintiff has standing to recover damages from Defendant under section 362(h) of the Bankruptcy Code.

Because Plaintiff has not expressly prayed for any relief other than damages under section 362(h), the Complaint will be dismissed unless amended pleadings are filed on or before March 20, 1995, seeking a finding that Defendant is in contempt of Court due to its actions taken while the automatic stay was in effect, seeking a declaratory judgment as to the extent, validity and priority of its lien in view of the fact that Defendant's foreclosure advertisements were void *ab initio,* or any other theory of recovery other than a claim for damages.