951 F.2d 242
 25 Collier Bankr.Cas.2d 1728, Bankr. L. Rep. P 74,393
In re PECAN GROVES OF ARIZONA, Debtor.
Clarence TILLEY, B & C Equities, Appellants,
v.
Robert VUCUREVICH, Trustee; Skousen; Jay Davis; Allen
Eide; Ron Offutt; Mel Clayton; Gerie Clayton;
Ralph Thomas, Appellees.
 No. 89-15815.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 11, 1990.
Decided Dec. 16, 1991.
 
 Thomas M. Swift, Mesa, Ariz., for appellants.
 James M. Marlar, Phoenix, Ariz., for appellees.
 Appeal from the Ninth Circuit Bankruptcy Appellate Panel.
 Before CHOY, TANG and FLETCHER, Circuit Judges.
 TANG, Circuit Judge:
 
 OVERVIEW
 
 1
 In the third bankruptcy proceeding brought by or on behalf of Pecan Groves, the Chapter 7 Trustee sought to avoid a trustee's sale which took place in violation of the automatic stay under the first bankruptcy proceeding. Clarence Tilley and B & C Equities were allowed to intervene with the trustee. After the Trustee, Tilley, and B & C had presented their case, the bankruptcy court granted judgment for Skousen and the Clayton Group and against the trustee. Tilley and B & C appealed; the trustee did not. The Bankruptcy Appellate Panel ("BAP") affirmed. Tilley and B & C appeal. We affirm.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 On October 6, 1978, Pecan Groves purchased a pecan grove located in Pinal County, Arizona from Pecan Centers of Arizona, Inc., a corporation in which Jerry Skousen was the sole or majority shareholder. As part of the purchase transaction, Pecan Groves executed a promissory note in the amount of $1,030,000 payable to Skousen and Pecan Centers of Arizona. The note was secured by a deed of trust on the property. John Hancock Life Insurance Company held a senior lien on the property.
 
 
 3
 After Pecan Groves defaulted on the promissory note, Commonwealth Title of Arizona in connection with the Pecan Centers of Arizona, Inc. and Skousen deed of trust caused a Notice of Trustee's sale to be set for August 23, 1982. Ten days before the sale, on August 13, Pecan Groves filed a petition for relief under Chapter 11 of the Bankruptcy Code in the District of Utah. Despite the filing of the petition and Skousen's knowledge of the petition, the trustee's sale was held as scheduled. Skousen himself purchased the property with a credit bid of $650,000, and recorded a trustee's deed evidencing the sale in Pinal County on August 30, 1982. Skousen then transferred the property to a trust he created.
 
 
 4
 Pecan Groves' responsible officers became aware of the trustee's sale shortly after the sale had been conducted, but were not aware that the trustee's deed had been recorded or that Skousen had transferred the property to a trust. At no time during the Utah Chapter 11 case did Pecan Groves make a demand for the return of the property sold at the trustee's sale or attempt to set aside the trustee's sale.
 
 
 5
 Nevertheless, during the Utah Chapter 11 case, Pecan Groves and Skousen acted as if Pecan Groves owned the property. Pecan Groves proposed a Chapter 11 plan that provided, in essence, that it would obtain a $2.2 million dollar loan secured by the property and that a portion of the property would be transferred free and clear of liens to Skousen. Skousen and his attorney, Forrest Gressley ("Gressley"), agreed to the terms of the proposed plan.
 
 
 6
 In the spring of 1983, Pecan Groves sought financing to provide irrigation and horticultural care for the property. Appellant Clarence Tilley ("Tilley") agreed to provide the financing. In April 1983, Gressley participated in a hearing regarding Pecan Groves' application to obtain secured credit from Tilley. The parties agreed at the hearing that, in return for providing financing, Tilley would receive a lien on the property junior only to that of John Hancock.
 
 
 7
 On April 27, 1983, the bankruptcy court entered an order authorizing Pecan Groves to obtain credit not to exceed $150,000 to be secured by a lien on the property senior to all secured claims except that of John Hancock. The order did not specify the lender, nor describe the property by legal description; it merely granted authority to obtain a loan.
 
 
 8
 Pursuant to the bankruptcy court's order, on April 29, 1983, Tilley and Pecan Groves executed an "Agreement to Provide Secured Line of Credit and Promissory Note (Secured)" under which Tilley agreed to extend a line of credit up to $150,000. The agreement provided that the parties "shall cause to be made and executed and recorded a Deed of Trust and Security Agreement evidencing the security granted by this loan in conformance with the Order of the Court." No such deed of trust or security agreement was executed. The agreement did not specify the exact loan amount, nor did it contain a legal description of the property that was to provide the security. On April 29, 1983, the agreement was recorded in Pinal County, Arizona. Tilley advanced the principal sum of $144,922.46 to Pecan Groves under the agreement and undertook an active role in managing the property.
 
 
 9
 Pecan Groves' bankruptcy case in Utah was dismissed on June 28, 1983. Tilley continued to manage the property after the dismissal. The order of dismissal was recorded in Pinal County on July 13, 1983. A notice of order of dismissal which contained an incomplete legal description of the property was recorded on July 15, 1983. On August 2, 1983, the trust to which Skousen had transferred the property deeded it back to him.
 
 
 10
 Following the dismissal, John Hancock caused another trustee's sale, under its deed of trust on the property, to be scheduled for November 10, 1983. On November 9, 1983, Tilley filed an involuntary Chapter 7 petition against Pecan Groves. During the pendency of the involuntary case, neither Pecan Groves, its trustee, nor Tilley took any action to contest Skousen's purchase of the property under the trustee's sale of August 23, 1982. The involuntary case was dismissed on September 4, 1984.
 
 
 11
 On December 29, 1983, in an arms-length negotiated transaction, Skousen sold the property to Jay Davis, Allen Eide, Ron Offutt, Mel Clayton, Gerie Clayton and Ralph Thomas, (collectively, the "Clayton Group") for $3,660,000.
 
 
 12
 Following the dismissal of the involuntary petition, Pecan Groves agreed with Tilley that it would file a voluntary petition under Chapter 7 in the District of Arizona. On December 14, 1984, Pecan Groves filed a voluntary petition, commencing the present bankruptcy case. The present trustee was appointed soon thereafter, but no action to challenge the title to the property was taken until the trustee filed this proceeding on November 21, 1985. The complaint initiating this proceeding was filed against Skousen and the Clayton Group and sought to re-obtain the property for the estate. It asserted four causes of action:
 
 
 13
 (1) For declaratory relief that Skousen's trustee's sale of August 23, 1982, was void;
 
 
 14
 (2) That the purported transfer to the Clayton Group was a fraudulent transfer under 11 U.S.C. § 548;
 
 
 15
 (3) That the trustee's sale to Skousen was a voidable post-petition transfer under 11 U.S.C. § 549; and
 
 
 16
 (4) That the title to the property should be quieted in the estate of the debtor.
 
 
 17
 Since 1984, Tilley and B & C Equities ("B & C") have obtained assignments of claims against Pecan Groves. B & C is a partnership between Tilley and Morton "Bud" Selzer that was formed to purchase the property. B & C has offered to purchase the property if the bankruptcy estate recovers the property in this action. B & C and Tilley paid nothing for the claims but promised to give the original claimant fifty percent of whatever dividend they received on the assigned claim and to finance the litigation to re-obtain the property for the bankruptcy estate.
 
 
 18
 On February 14, 1986, Tilley and B & C intervened as plaintiffs and alleged the same causes of action asserted by the trustee. Tilley further prayed for a declaration that he has a valid lien upon the property, prior and superior to any interest of the Clayton Group and Skousen. Until he intervened, Tilley had never sought to enforce his lien against the property and had never communicated with the Clayton Group.
 
 
 19
 At the conclusion of the trustee's case, the bankruptcy court granted Skousen's and the Clayton Group's oral motion for a directed verdict. The bankruptcy court entered a final judgment dismissing the complaint with prejudice and quieting title to the Clayton Group.
 
 
 20
 The bankruptcy court held that the trustee, B & C, and Tilley could not prevail because the Clayton Group was a good faith purchaser of the pecan groves for value. Additionally, the bankruptcy court held that laches precluded the claims of the trustee, Tilley, and B & C.
 
 
 21
 On November 12, 1987, B & C and Tilley, but not the trustee, appealed to the BAP. The BAP affirmed the bankruptcy court's ruling and held that B & C and Tilley did not have standing to appeal. As an alternate basis for affirming, the BAP held that the bankruptcy court did not abuse its discretion in determining that laches barred the claims of B & C and Tilley.
 
 STANDARD OF REVIEW
 
 22
 We review decisions of the Bankruptcy Appellate Panel de novo. Romley v. Sun Nat'l Bank (In re Two "S" Corp.), 875 F.2d 240, 242 (9th Cir.1989). We review the bankruptcy court's findings of fact under a clearly erroneous standard and its conclusions of law de novo. Griffel v. Murphy (In re Wegner), 839 F.2d 533, 536 (9th Cir.1988).
 
 DISCUSSION
 
 23
 Skousen argues that B & C and Tilley do not have standing to attack violations of the stay because they are merely creditors, and not the debtor or the trustee. We agree and affirm the decision of the bankruptcy court.
 
 A. Standing as Creditors
 
 24
 Where the original party to a lawsuit decides not to appeal (here, the trustee), the intervenor must have independent standing to appeal. Diamond v. Charles, 476 U.S. 54, 68-69, 106 S.Ct. 1697, 1706-07, 90 L.Ed.2d 48 (1986). "Only those persons who are directly and adversely affected pecuniarily by an order of the bankruptcy court have been held to have standing to appeal that order." Fondiller v. Robertson (In re Fondiller), 707 F.2d 441, 442 (9th Cir.1983). This rule derives from the nature of bankruptcy litigation, which almost always implicates the interests of persons who are not formally parties to the litigation. "Efficient judicial administration requires that appellate review be limited to those persons whose interests are directly affected." Id. at 443.
 
 
 25
 B & C and Tilley argue that they have standing because they have been injured in their status as creditors of Pecan Groves. B & C and Tilley argue that the purpose of the automatic stay is to protect both the debtor and creditors. See Stringer v. Huet (In re Stringer), 847 F.2d 549, 551 (9th Cir.1988). B & C and Tilley also argue that if they are not permitted to appeal this order, the lower court will have indirectly given an incentive to creditors to act in violation of the stay, because it is possible that their actions will never be protested by the trustee. B & C and Tilley further argue that allowing creditors to challenge actions violating the stay furthers the policy of the bankruptcy law to preserve the debtor's assets.
 
 
 26
 In previous cases, we have reserved the question of whether a creditor can attack violations of the automatic stay. James v. Washington Mut. Sav. Bank (In re Brooks), 871 F.2d 89, 90 n. 1 (9th Cir.1989); Magnoni v. Globe Inv. and Loan Co. (In re Globe Inv. and Loan Co.), 867 F.2d 556, 559 (9th Cir.1989). While there is no precedent on point in the Ninth Circuit, the majority of jurisdictions which have considered standing under the automatic stay provision, 11 U.S.C. § 362, have concluded that section 362 is intended solely to benefit the debtor estate. See In re Globe, 867 F.2d at 559 & n. 6 (citing cases). Language from many cases indicates that, if the trustee does not seek to enforce the protections of the automatic stay, no other party may challenge acts purportedly in violation of the automatic stay. Washington Mut. Sav. Bank v. James (In re Brooks), 79 B.R. 479, 481 (Bankr. 9th Cir.1987), aff'd on other grounds 871 F.2d 89 (9th Cir.1989); Bryce v. Stivers (In re Stivers), 31 B.R. 735, 735 (Bankr.N.D.Cal.1983); Hadsell v. Philadelphia Life Ins. Co. (In re Fuel Oil Supply and Terminaling, Inc.), 30 B.R. 360, 362 (Bankr.N.D.Tex.1983).
 
 
 27
 The trustee is charged with the administration of the estate for the debtor's and creditor's benefit. Allowing unsecured creditors to pursue claims the trustee abandons could subvert the trustee's powers. Granting claimants like Tilley and B & C standing will overburden the bankruptcy courts with litigation. Here, the trustee has not appealed the adverse ruling of the trial court. No other party may challenge this ruling. We therefore hold that a creditor has no independent standing to appeal an adverse decision regarding a violation of the automatic stay.
 
 B. Tilley's Standing as a Property Owner
 
 28
 Tilley argues that, because he holds a lien against this property, he is different than an ordinary creditor and should be allowed to attack the violation of the automatic stay. However, this court has held that property owners have no standing to challenge the sale by the bankrupt's trustee of the debtor's interest in that property in violation of the stay. In re Globe, 867 F.2d at 560. The Globe decision rested on the rationale that the stay does not protect the rights of outside parties. Id. The court held that, although the plaintiffs were creditors of the estate, they were in reality attacking the violation of the stay as property owners with interests adverse to the estate. Id. Because the plaintiffs in Globe were attacking the sale in violation of the stay as property owners, the court refused to extend the protection of the stay to them. Id. Likewise, Tilley's standing as a lienholder, and thus as a property owner with interests adverse to the estate, requires us to hold that he does not have standing in a bankruptcy proceeding to challenge actions as violative of the stay.
 
 CONCLUSION
 
 29
 We hold that B & C and Tilley do not have standing to pursue this appeal. The judgment of the bankruptcy court and the BAP is
 
 
 30
 AFFIRMED.