**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

BANK OF NEW YORK MELLON, FKA
Bank of New York, as Trustee for
the Certificateholders of CWALT,
Inc., Alternative Loan Trust 2005-
54CB, Mortgage Pass-Through
Certificates Series 2005-54CB,
*Plaintiff-Appellant,*

v.

ENCHANTMENT AT SUNSET BAY
CONDOMINIUM ASSOCIATION; 732
HARDY WAY TRUST,
*Defendants-Appellees,*

and

HAROLD HILL; NEVADA
ASSOCIATION SERVICES, INC.,
*Defendants.*

No. 19-17048

D.C. No.
2:17-cv-01916-
RFB-EJY

OPINION

Appeal from the United States District Court
for the District of Nevada
Richard F. Boulware II, District Judge, Presiding

Argued and Submitted November 17, 2020
Pasadena, California

Filed June 25, 2021

Before:  Johnnie B. Rawlinson, Danielle J. Forrest, and
Lawrence VanDyke, Circuit Judges.

Opinion by Judge VanDyke;
Concurrence by Judge VanDyke;
Dissent by Judge Forrest

## SUMMARY[*]

**Nevada Foreclosure Law / Bankruptcy Automatic Stay**

The panel reversed the district court's summary judgment that was entered in favor of the 732 Hardy Way Trust, its denial of summary judgment to the Bank of New York Mellon (the "Bank"), and its dismissal of the Bank's claims against a Homeowners Association ("HOA") in a quiet title action brought by the Bank, concerning title to real property in Nevada that was subject to a HOA nonjudicial foreclosure sale.

Harold Hill purchased property at 732 Hardy Way, Mesquite, Nevada.  The Bank was a first deed of trust lienholder.  In January 2014, Hill fell behind in his HOA dues, and the HOA recorded a notice of delinquent assessment lien in February 2014.  In April 2014, Hill filed for Chapter 13 bankruptcy, and an automatic stay went into effect.  On July 15, 2014, while Hill's bankruptcy case was pending, the HOA recorded a notice of foreclosure sale, and sold the property to the Trust.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The panel held that the Bank had prudential standing to make the argument that the HOA foreclosure sale occurred in violation of the automatic stay and was thus void. Because the Bank had standing, its interest as a creditor was protected under Nevada law.  The panel held further that any HOA foreclosure sale in violation of the automatic bankruptcy was void, and not merely voidable, under Nevada law.  The panel concluded that the Bank's interest was superior to the Trust's interest where the Bank provided evidence that: Hill listed the property in his bankruptcy schedules in March 2014; the automatic bankruptcy stay was active through 2017; and the property was auctioned off on September 19, 2014.  The panel held that the Bank should receive quiet title to the property under Nevada Revised Statute 40.010.

In his concurring opinion, Judge VanDyke wrote separately to explain further why he thought Judge Forrest's dissent was incorrect.  He wrote that underlying the dissent's analysis was the concept that the factual voidness of the foreclosure sale here could only be raised in this state-law action by certain entities, which meant that the sale was only void as to certain entities if they so choose. This is what was usually meant when a transaction was said to be "voidable, not void."  The dissent's reliance on a "voidable, not void" rationale was directly at odds with this court's clear authority recognizing that violations of a bankruptcy stay are in fact "void," not voidable.  The dissent's assertion that the automatic stay did not protect individual creditors when pursuing claims that were adverse or unrelated to the debtor's estate was not an accurate reflection of this circuit's, or the Supreme Court's, precedent generally.

Dissenting, Judge Forrest would hold that the Bank was not entitled to enforce the automatic stay or seek relief based

on a violation of the bankruptcy stay because in seeking relief, the Bank was not acting as a "creditor" within the meaning of the Bankruptcy Code.   Specifically, Judge Forrest wrote that the automatic stay did not protect litigants pursuing claims that were adverse or unrelated to the distribution of the debtor's estate.   The Bank wanted the foreclosure sale declared void to preserve its lien interest in the subject property, but voiding the foreclosure sale did not advance or preserve the bankruptcy estate, and it had nothing to with the Bank's claim against the debtor or against the estate.   Accordingly, the automatic stay did not confer any rights upon the Bank in the context of this case.   Judge Forrest disagreed with the majority's conclusion that state law, not federal law, resolved this case.   She would hold that the Bank was not within the class of persons entitled to enforce the automatic stay, and therefore, the Bank's quiet title claim was without merit and must be dismissed.   Finally, Judge Forrest disagreed with the concurrence's discussion of the void-not-voidable rule.

**COUNSEL**

Ariel E. Stern (argued), Natalie L. Winslow, and Rex D. Gardner, Akerman LLP, Las Vegas, Nevada, for Plaintiff-Appellant.

Michael F. Bohn (argued), Law Offices of Michael F. Bohn, Henderson, Nevada, for Defendant-Appellee 732 Hardy Way Trust.

Ryan D. Hastings (argued) and Sean L. Anderson, Leach Kern Gruchow Anderson Song, Las Vegas, Nevada, for Defendant-Appellee Enchantment at Sunset Bay Condominium Association.

---

**OPINION**

VANDYKE, Circuit Judge:

In this case, we are again presented with the effect of a foreclosure of a superpriority lien granted to a homeowners' association (HOA) under Nevada Revised Statute 116.3116.[1] As a consequence of the late-2000's financial crisis and its effect on Nevada homeowners, our court has seen many cases involving Nevada's HOA superpriority lien statute. But this case involves a unique wrinkle that we have not yet addressed. We must decide whether the Bank of New York Mellon (Bank), as the first deed of trust lienholder, may set aside a completed superpriority lien foreclosure sale on the grounds that the sale occurred in violation of the

---

[1] We refer here only to the version of the Nevada homeowners' association foreclosure statute in effect from 2013 to 2015, prior to the 2015 amendment. *See* 2015 Nev. Stat. 1332–49.

automatic stay in bankruptcy proceedings.  *See* 11 U.S.C. § 362(a).  Because the Bank has standing under Nevada's quiet title statute, Nevada Revised Statute 40.010, and established case authority confirms that any HOA foreclosure sale made in violation of the bankruptcy stay—like the foreclosure sale here—is void, not merely voidable, *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 571–72 (9th Cir. 1992), we conclude that the Bank may raise the HOA's violation of the automatic stay provision, and that the Bank has superior title.[2]

## I.  BACKGROUND

This dispute involves the property at 732 Hardy Way in Mesquite, Nevada (Property), located in the Enchantment at Sunset Bay Condominium Association (HOA), and subject to the HOA's Declaration of Covenants, Conditions, and Restrictions, recorded in 2003.  In 2005, Harold Hill purchased the Property with a $185,400 loan that was assigned to the Bank in 2013.  In January 2014, Hill fell behind in his HOA dues, and the HOA recorded a Notice of Delinquent Assessment Lien.  The next month, the HOA recorded a Notice of Default and Election to Sell and informed Hill that he needed to pay $3,130.56 or his home would be sold.  By April 2014, Hill had filed for Chapter 13 bankruptcy and stated in his bankruptcy plan that he was surrendering the Property to the Bank and the HOA.  An automatic bankruptcy stay went into effect, staying "any act to . . . enforce any lien against property of the estate." 11 U.S.C. § 362(a)(4).

---

[2] We thus do not reach the issue of whether the sale should be set aside as a matter of equity or based on the Bank's due process claims.

While Hill's bankruptcy case was still pending, the HOA recorded a Notice of Foreclosure Sale on July 15, 2014, and several weeks later sold the Property to 732 Hardy Way Trust (Trust) for $6,072.29 at a nonjudicial foreclosure sale.[3] The Bank subsequently initiated this litigation, in which it (1) sued the HOA and the Trust to quiet title and for declaratory relief on the basis that the foreclosure sale was void and therefore did not extinguish the Bank's first deed of trust; (2) sought a preliminary injunction to prevent the Trust from selling or transferring the Property; and (3) requested an order declaring that the Bank could foreclose on its deed of trust. The Bank also sued the HOA for breach of Nevada Revised Statute 116.1113 and wrongful foreclosure.[4]

The Bank and the Trust each moved for summary judgment. The Trust argued it had superior title because the HOA foreclosure sale extinguished the Bank's deed of trust. Conversely, the Bank argued that the HOA foreclosure sale did not extinguish its lien because, inter alia, the sale violated the automatic bankruptcy stay and was thus void under Nevada and Ninth Circuit precedent, or alternatively, Nevada's HOA foreclosure statute violated due process. The district court granted summary judgment in favor of the Trust and dismissed the remaining claims against the HOA, holding simply "that the foreclosure sale extinguished the [Bank's] deed of trust on the [P]roperty and that [the Trust]

---

[3] The Trust does not dispute the Bank's assertion that the HOA foreclosure sale violated the bankruptcy stay when it recorded its notice of sale. *See* 11 U.S.C. § 362(a)(4), (5) (preventing "any act to create, perfect, or enforce" a lien against either the property of the estate or the property of the debtor).

[4] The Bank also pursued claims against Hill and the HOA's collection agent, which it does not raise on appeal.

purchased the property free and clear of the deed of trust." The Bank timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.  DISCUSSION

"We review de novo 'the district court's decision on cross-motions for summary judgment.'"  *BNSF Ry. Co. v. Or. Dep't of Revenue*, 965 F.3d 681, 685 (9th Cir. 2020) (citation omitted).  "Here, . . . no material facts are disputed, so we 'ask only whether the district court correctly applied the relevant substantive law.'"  *Id.* (citation omitted).

### A.  The Bank Has Standing to Raise the Violation of the Automatic Bankruptcy Stay.

The district court concluded that under *Tilley v. Vucurevich (In re Pecan Groves)*, 951 F.2d 242, 245 (9th Cir. 1991), the Bank lacked standing to challenge any violation of the automatic stay because it "was neither a party, a debtor, or a trustee in [the underlying] bankruptcy matter."  The Bank argues that the district court misapplied *In re Pecan Groves* and incorrectly used that bankruptcy case to prevent the Bank from raising the voidness of the foreclosure sale in this diversity action in federal court.  We agree that the district court indeed erred because the Bank had standing to make the argument that the HOA foreclosure sale occurred in violation of the bankruptcy stay and was thus void.

The parties do not dispute that the Bank has Article III standing, as the alleged extinguishment of the Bank's first deed of trust can be fairly traced to the HOA's violation of the bankruptcy stay.  *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  Instead, the Trust argues that the Bank does not have prudential standing such that the Bank's

grievance "fall[s] within the zone of interests protected or regulated by the statutory provision . . . invoked in the suit." *Bennett v. Spear*, 520 U.S. 154, 162 (1997).[5]

We disagree.  The Bank here brought its quiet title claim under Nevada Revised Statute 40.010, which allows suit "by any person against another who claims an estate or interest in real property, adverse to the person bringing the action, for the purpose of determining such adverse claim."  Such a broad statement clearly "grants the [Bank] the cause of action that [it] asserts"—a declaration of its interest in the subject Property vis-à-vis the Trust's interest—such that the Bank satisfies the zone-of-interests test for prudential standing purposes.  *Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296, 1302 (2017).

Although we held in *In re Pecan Groves* that "a creditor has no independent standing to appeal an adverse decision regarding a violation of the automatic stay," the Bank's quiet title action does not implicate this ruling.  *In re Pecan Groves*, 951 F.2d at 245.  In that case, we addressed whether a creditor had standing to appeal a bankruptcy order and reasoned that as "the trustee ha[d] not appealed the adverse

---

[5] As the Supreme Court observed in the *Lexmark* case, portraying this question as one of "'prudential standing' is [technically] a misnomer."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014) (citation omitted).  The Supreme Court "in *Lexmark . . .* rejected the 'prudential standing' label and made clear that whether a plaintiff's claims are within a statute's zone of interests is not a *jurisdictional* question."  *Pit River Tribe v. Bureau of Land Mgmt.*, 793 F.3d 1147, 1156 (9th Cir. 2015) (emphasis added) (citing *Lexmark Int'l*, 572 U.S. at 126–28).  Indeed, "[w]hether a plaintiff comes within 'the "zone of interests"' is an issue that requires us to determine, using traditional tools of statutory interpretation, whether a legislatively conferred *cause of action* encompasses a particular plaintiff's claim."  *Lexmark Int'l*, 572 U.S. at 127 (emphasis added) (citation omitted).

ruling . . . [n]o other party [could] challenge this ruling." *Id.* We did not consider whether a creditor was precluded from advancing a quiet title action premised on violation of the automatic stay, particularly in a diversity case where state law recognizes such a claim as a basis for voiding a foreclosure sale.

In contrast to the facts and procedural posture of *In re Pecan Groves*, the Bank brought this quiet title diversity action pursuant to Nevada precedent invalidating HOA foreclosure sales when the HOA has violated the automatic stay. *LN Mgmt. LLC Series 5105 Portraits Place v. Green Tree Loan Servicing, LLC (Portraits Place)*, 399 P.3d 359, 360–61 (Nev. 2017) (recognizing that "the HOA foreclosure sale was an act in violation of the automatic stay, despite the lack of notice of the homeowners' bankruptcy," and that the sale was "invalidated").  When adjudicating various types of state law disputes, Nevada courts consistently consider the voidness of actions taken in violation of a federal bankruptcy stay.  *See SFR Investments Pool 1, LLC v. U.S. Bank, N.A.*, 449 P.3d 461, 465 (Nev. 2019) (en banc) (holding that "it was proper of the district court to consider the stay in balancing the equities, as the court must consider all of the circumstances surrounding the sale" because "[t]he fact that the sale was in violation of a bankruptcy stay at the time the sale was held may be relevant to U.S. Bank's failure to act and the sale price," and "it would be reasonable for a lender not to attend a foreclosure sale if it believe[d] that the sale [was] being conducted in violation of a bankruptcy stay"); *Gundala v. BAC Home Loans Servicing, LP*, 483 P.3d 1121, 2021 WL 1531154, at *1 (Nev. 2021) (unpublished) (concluding that "the HOA recorded a Notice of Delinquent Assessment in March 2011 and a Notice of Default in June 2011, both of which were recorded while the automatic stay was in effect," and "[b]ecause the abovementioned notices

were both recorded while the automatic stay was in effect, the district court correctly determined that they were void and that the ensuing HOA foreclosure sale was also void"); *NV Eagles, LLC v. Nationstar Mortg., LLC*, 462 P.3d 1230, 2020 WL 2527389, at \*1 (Nev. 2020) (unpublished) (opining that "[a]lthough appellant contends that the sale did not violate the automatic stay because the debtor had been personally discharged before the sale, the subject property was still part of the bankruptcy estate at the time of the sale and therefore was still subject to the automatic stay," and that "the [state] district court correctly determined that the HOA's foreclosure sale was invalid because it violated the automatic bankruptcy stay"); *CitiMortgage, Inc. v. Corte Madera Homeowners Ass'n*, 962 F.3d 1103, 1110 (9th Cir. 2020) (recognizing in a quiet title action that "generally, the filing of bankruptcy will stay all proceedings relating to a foreclosure sale," and that, under Nevada law, the filing of notices related to foreclosure may violate the automatic stay) (citation and alteration omitted).

## B. Any HOA Foreclosure Sale in Violation of the Automatic Bankruptcy Stay is Void under Nevada Law.

To prevail on its claim, the Bank must prove that its interest in the Property is superior to the Trust's interest. *Chapman v. Deutsche Bank Nat'l Tr. Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (en banc). In this case, the Bank's interest is superior to the Trust's interest because under Nevada precedent, an HOA foreclosure "sale conducted during an automatic stay in bankruptcy proceedings is invalid." *Portraits Place*, 399 P.3d at 359–60.

Here, the Bank provided evidence showing that: (1) Hill listed the Property in his bankruptcy schedules in March 2014; (2) the automatic bankruptcy stay was active through

2017; and (3) the Property was auctioned off on September 19, 2014.[6]   As the Nevada Supreme Court concluded in *Portraits Place*, where the property is "listed . . . in the[] relevant bankruptcy schedule" and sold "[d]uring the bankruptcy proceedings . . . without seeking relief from the automatic stay," such a "sale was void." *Id.*   The "purchase of the property at the [foreclosure] sale was without effect." *40235 Wash. St. Corp. v. Lusardi*, 329 F.3d 1076, 1080 (9th Cir. 2003).[7]   Therefore, the Bank should receive quiet title to the Property under Nevada Revised Statute 40.010.

The dissent's assertion that our decision relies on federal bankruptcy code as the substantive rule of decision in this case misconstrues our rationale.  A violation of federal law can have independent consequences under state law.  And when that happens, it is not entirely accurate to characterize those consequences as "sole[ly]" a matter of federal, not state, substantive law.  Instead, the substantive rule of decision depends on how *state law* treats the federal violation.  A helpful analogy might be driving in Nevada with an expired Oregon driver's license.  Whether the license is expired or not will be controlled by Oregon law.  But the *consequences* of driving on that expired license in Nevada will be controlled by Nevada law.  Similarly, here, the

---

[6] The Trust in its answering brief does not contest this case authority or these facts, focusing its argument solely on contesting the Bank's standing.

[7] The Trust's argument that it was a bona fide purchaser (BFP), is not a defense in this situation under Nevada law because "[a] party's status as a BFP is irrelevant when a defect in the foreclosure proceeding renders the sale void." *Bank of Am., N.A. v. SFR Investments Pool 1, LLC*, 427 P.3d 113, 121 (Nev. 2018) (en banc), *as amended on denial of reh'g* (Nov. 13, 2018).

factual voidness of the Property's transfer is a result of federal bankruptcy law.  But the consequences of such a void transaction for purposes of a Nevada quiet title action are controlled by Nevada's property laws.[8]  Nevada courts may determine that violations of federal bankruptcy laws—particularly violations that result in "void" transactions—have state law consequences for Nevada property, which was exactly what the Nevada Supreme Court did in *Portraits Place*.  399 P.3d at 360 (concluding in a Nevada quiet title action that because "the HOA foreclosure sale was an act in violation of the automatic stay . . . the violation of the automatic stay invalidated the HOA foreclosure sale").

## III.  CONCLUSION

The district court erred in holding that the Bank lacked standing to pursue its quiet title claim in federal court.  Because the Bank has standing, its interest as a creditor is protected under Nevada law, and the HOA foreclosure sale in violation of the bankruptcy stay was void, applicable precedent compels us to conclude that the Bank has superior title.  For these reasons, we reverse the district court's grant of summary judgment in favor of the Trust, its denial of summary judgment to the Bank, and its dismissal of the Bank's claims against the HOA, and remand for proceedings consistent with this opinion.

## REVERSED AND REMANDED.

---

[8] State law here merely recognizes and applies a fact (voidness) created by operation of federal law.  A state's attempt to nullify the result of federal law might present questions not at issue in this case.

VANDYKE, Circuit Judge, concurring:

I write separately to explain further why I think Judge Forrest's thoughtful analysis in her dissent is nonetheless incorrect. Stepping back from our doctrinal differences for a moment, there is something peculiar about the dissent's conclusion that, yes, the HOA foreclosure sale at issue in this case was void as a matter of federal bankruptcy law, but Nevada property law must turn a blind eye to that fact. That approach would force Nevada to ignore a reality that our own court has recognized again and again: that violations of a bankruptcy stay are void, not merely voidable.[1]

I think the dissent's counterintuitive conclusion is a result of trying to reconcile the irreconcilable. Underlying the dissent's analysis is the concept that the factual voidness of the foreclosure sale here may only be raised in this state-law action by certain entities—meaning, the sale is only void as to *certain* entities if they so choose. But that is what is usually meant when we say a transaction is "voidable, not void." If only the "debtor [may] affirmatively challenge creditor violations of the stay," for example, then such violations "are merely voidable," not void. *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 571 (9th Cir. 1992). Ultimately, the dissent cannot escape its reliance on a "voidable, not void" rationale—one that is directly at odds with our circuit's clear authority recognizing that violations

---

[1] On the other hand, unlike the dissent I don't find it particularly peculiar that a party could assert a claim in a state-law quiet title action that it was procedurally prevented from raising in a bankruptcy proceeding. Procedural rules regularly prevent parties from asserting claims in one type of proceeding but not another. Diverse parties litigating a state-law tort claim under $75,000 could litigate their dispute in state court, for example, but would be procedurally barred from litigating in federal court.

of a bankruptcy stay are, in fact, "void," not voidable. *Id.* at 575.

This fundamental contradiction is not by accident. It is a necessary consequence of the dissent's commendable but nevertheless doomed attempt to apply our circuit's caselaw about prudential standing in bankruptcy proceedings to this non-bankruptcy case applying Nevada property law in a diversity action. The first problem with this attempt is addressed by the majority opinion—that prudential standing in bankruptcy proceedings and Nevada property law are just two different things, and the dissent is improperly trying to mix apples and oranges. But this problem is exacerbated by something else—the fact that our circuit's caselaw about prudential standing in bankruptcy proceedings historically grew out of a "voidable, not void" rationale, which our circuit has since repeatedly rejected. It should come as no surprise, then, that when the dissent (improperly) attempts to transpose our bankruptcy prudential standing jurisprudence onto this case, it ends up right back where that jurisprudence started—with a voidable, not void, rationale. And as a corollary to that error, the dissent is forced to mistakenly argue that a creditor such as the Bank "falls outside the zone of interests protected by the automatic stay," when both the Supreme Court and our court have said otherwise.

1.  Towards the end of the dissent, it acknowledges that in our circuit's caselaw a foreclosure sale in violation of the bankruptcy stay is void, and not merely voidable. But the dissent interprets void to mean void *only as to certain entities*—those related to the debtor's estate—meaning that in the absence of an active debtor, creditors may not challenge "void" transactions. This is just redefining "void, not voidable" as "voidable, not void." It also ignores the fact that we have consistently reapplied *In re Schwartz* to affirm

that any violations of the automatic stay provision are indeed void—full stop.  *See Burton v. Infinity Capital Mgmt.*, 862 F.3d 740, 747 (9th Cir. 2017) (judicial interference); *In re Dyer*, 322 F.3d 1178, 1188 (9th Cir. 2003) (attempt to record deed of trust); *40235 Wash. St. Corp. v. Lusardi*, 329 F.3d 1076, 1080 (9th Cir. 2003) (tax sale).  Nor are we the only court to hold this view.  *See In re Myers*, 491 F.3d 120, 127 (3d Cir. 2007) ("We have indeed held that actions taken in violation of the stay are void."); *United States v. White*, 466 F.3d 1241, 1244 (11th Cir. 2006) ("It is the law of this Circuit that '[a]ctions taken in violation of the automatic stay are void and without effect.'" (citation omitted)); *Mann v. Chase Manhattan Mortg. Corp.*, 316 F.3d 1, 3 (1st Cir. 2003) ("acts undertaken in violation of the automatic stay are . . . void"); *In re Colonial Realty Co.*, 980 F.2d 125, 137 (2d Cir. 1992) ("[S]o central is the § 362 stay to an orderly bankruptcy process that actions taken in violation of the stay are void and without effect." (quotation marks and citation omitted)); *Ellis v. Consol. Diesel Elec. Corp.*, 894 F.2d 371, 372 (10th Cir. 1990) ("It is well established that any action taken in violation of the stay is void and without effect.").[2]

If a transaction is void, it is null—it is as if it never existed.[3]  On the other hand, if a transaction is voidable, it

---

[2] There is, as the dissent notes, a circuit split on the "void-versus-voidable distinction."  As demonstrated by the cases cited above, our circuit is firmly on the "void, not voidable" side of that split.

[3] *Void*, BLACK'S LAW DICTIONARY (6th ed. 1990) (citing, inter alia, *In re Oliver*, 38 B.R. 245, 248 (Bankr. D. Minn. 1984)) ("Null; ineffectual; nugatory; having no legal force or binding effect; unable, in law, to support the purpose for which it was intended.  An instrument or transaction which is wholly ineffective, inoperative, and incapability of

may still be enforced by some entities, but not others.  The dissent essentially redefines "void" to mean "void from the perspective of certain entities, but not others."  But that is what everyone else means when they say a transaction is merely voidable.[4]

2.  The dissent's conclusions that transactions in violation of the bankruptcy stay are only void as to certain debtors and creditors is understandable given the cases on which the dissent relies—not because "void" has ever been understood to mean "only void for some entities," but because the older bankruptcy standing cases the dissent cites were either directly or indirectly based on the now-rejected rationale that such transactions were merely *voidable*, not void.  For example, the dissent applies *Magnoni v. Globe Inv. & Loan Co., Inc. (In re Globe)*, 867 F.2d 556, 560 (9th Cir. 1989), which reached its conclusion that Bankruptcy Code "section 362 . . . does not confer any rights to outside parties" by citing to *In re Brooks*, 79 B.R. 479 (B.A.P. 9th Cir. 1987).  The dissent also cites to *Tilley v. Vucurevich (In re Pecan Groves)*, which similarly relied on *In re Brooks* to conclude that only "the trustee . . . [may] seek to enforce the protections of the automatic stay."  951 F.2d 242, 245 (9th Cir. 1991).  The *In re Brooks* decision, in turn, rested on two key assertions, that (1) "a transfer made in violation of the stay *may be voidable* at the trustee's discretion," rather than simply void, *id.* at 480 (emphasis added), and (2) the automatic bankruptcy stay benefits only the debtor, and

---

ratification and which thus has no force or effect so that nothing can cure it.").

[4] *Voidable*, BLACK'S LAW DICTIONARY (6th ed. 1990) ("That which may be avoided or declared void; not absolutely void, or void in itself.").

"[o]ther parties affected . . . [have] no substantive or procedural rights," *id.* at 481.[5]

Both of these determinations are inconsistent with our more recent bankruptcy jurisprudence.[6]  *In re Schwartz* clarified that such transfers are actually void, not merely voidable.  954 F.2d at 571–72.  And the Supreme Court has explicitly stated that, irrespective of whether claims are made against the debtor's estate, "[t]he automatic stay . . . benefits creditors *as a group* by preventing individual creditors from pursuing their own interests *to the detriment of the others*."  *City of Chicago v. Fulton*, 141 S. Ct. 585, 589 (2021) (emphasis added).  Our court has said the same thing in the years since *In re Globe*.  *See In re Mwangi*, 764 F.3d 1168, 1173 (9th Cir. 2014) ("The stay [thus] protects the debtor . . . and also protects creditors as a class from the possibility that one creditor will obtain payment on its claims to the detriment of all others." (citation omitted));

---

[5] The dissent relies on *In re Globe* and *In re Pecan Groves* as support for its position that "void" really means just void as to certain parties.  That would only work if those opinions purported to be reaching their conclusions in a "void, not voidable" framework.  But quite the contrary, as explained, those opinions are squarely rooted in *In re Brooks*'s "voidable, not void" rationale, so the dissent's attempt to rely on them as demonstrating how to "apply the void-not-voidable rule" makes no sense.

[6] The dissent states I am "suggesting that *In re Globe* and *In re Pecan Groves* are no longer good law."  Well, that depends on what the dissent means.  If it means to suggest that I am suggesting those decisions are no longer binding precedent about prudential standing in bankruptcy proceedings, that's not true.  Right or wrong, their holdings remain binding precedent in that context until changed by our court.  If the dissent means that I don't think they are *good* law in the sense of being *correct* law, then I might be guilty as charged.  The cases are expressly based on a premise (violations of the bankruptcy stay are voidable, not void) that we have since rejected in our bankruptcy law.

*In re Sherman*, 491 F.3d 948, 971 (9th Cir. 2007) (citing H.R. Rep. No. 95–595, at 340 (1977) to "observ[e] that another purpose of the automatic stay is to protect creditors by providing 'an orderly liquidation procedure under which all creditors are treated equally'"); *In re Dawson*, 390 F.3d 1139, 1147 (9th Cir. 2004), *abrogated on other grounds by In re Gugliuzza*, 852 F.3d 884 (9th Cir. 2017) (citing H.R. Rep. No. 95–595, at 340 (1977) to note "[t]he automatic stay also provides creditor protection.  Without it, certain creditors would be able to pursue their own remedies against the debtor's property"); *United States v. Dos Cabezas Corp.*, 995 F.2d 1486, 1491 (9th Cir. 1993) ("The purpose of the automatic stay provision is two-fold.  By halting all collection efforts, '[i]t gives the debtor "a breathing spell"' . . . .  By preventing creditors from pursuing to the detriment of others, their own remedies against the debtors' property *the stay protects creditors*." (emphasis added) (citation omitted)); *cf. Matter of Ring*, 178 B.R. 570, 577–81 (Bankr. S.D. Ga. 1995) (observing that "[c]learly, creditors do benefit from the automatic stay" such that "it creates a facially anomalous result [if] . . . a creditor who is adversely affected by [a stay violation] nevertheless is without standing" in bankruptcy proceedings and concluding that, contrary to Ninth Circuit precedent arising from *In re Brooks*, "a holder of a lien in property . . . has standing to seek a declaratory judgment that such transfer is void *ab initio*" before the bankruptcy court).

Given this precedent, the dissent's assertion that "the automatic stay does not protect individual creditors when pursuing claims that are adverse or unrelated to the debtor's estate" is not an accurate reflection of our circuit's (or the Supreme Court's) precedent generally.  It is admittedly accurate (albeit wrong) only within the narrow context of our caselaw governing *prudential standing in a bankruptcy*

*proceeding*.  It is not accurate more broadly.  Because the principles underlying *In re Globe*'s and *In re Pecan Groves*'s conclusions in the bankruptcy proceeding context are clearly outdated and inconsistent with our more recent precedent, I would not extend their prudential standing rationale to control what types of arguments can be raised with respect to a Nevada state-law property claim (e.g., factual voidness).  Our bankruptcy proceeding jurisprudence is internally inconsistent.  I see no reason to extend the *outdated* side of that inconsistency to effectively censor a party from presenting a factually-true argument in the context of its state-law claim outside of a bankruptcy proceeding.

The majority's decision awarding quiet title to the Bank because the foreclosure sale in violation of the bankruptcy stay was void does not, contrary to the dissent, undermine the protections of the bankruptcy stay or the trustee's role in protecting the estate.  Quite the opposite, it achieves one of the objectives of the stay noted even by the dissent: by allowing other creditors to point out that a creditor's sale violated the stay and is therefore void, it reduces the incentive for creditors to "rac[e] to various courthouses to pursue independent remedies to drain the debtor's assets." *Dean v. Trans World Airlines, Inc.*, 72 F.3d 754, 755–56 (9th Cir. 1995).  Contrary to the dissent, recognizing the voidness of this transaction in a Nevada quiet title action in no way "seeks to use the stay in a manner contrary to its purposes."[7]

---

[7] The dissent characterizes my argument as claiming "that the automatic stay protects the Bank because it was a 'creditor' of the debtor in the underlying bankruptcy proceedings."  That misunderstands my argument.  The Bank prevails in this case because the HOA foreclosure sale was void, and can be recognized as such in a Nevada quiet title action, regardless of who would be "protected"—that is, who would have

Boiled down to their essentials, the difference between the majority and the dissent in this case reduces to whether a transaction in violation of a bankruptcy stay is void, or merely voidable. Our precedent clearly says it is void—like it never happened. Our outdated bankruptcy standing jurisprudence may, until it is corrected, improperly require us to ignore that glaring fact in some circumstances in federal bankruptcy proceedings. But there is no reason Nevada property law must duplicate that error.

---

FORREST, Circuit Judge, dissenting:

The majority holds that a first deed of trust lienholder—here, Bank of New York Mellon (Bank)—can set aside a completed foreclosure sale through a state-law quiet-title action on the grounds that the foreclosure violated the automatic bankruptcy stay provided for under the Bankruptcy Code. I respectfully dissent because, in seeking this relief, the Bank is not acting as a "creditor" within the meaning of the Bankruptcy Code and, therefore, is not entitled to enforce the automatic stay or seek relief based on a violation of the stay.

## I. Standing

As a threshold matter, I agree with the majority that the district court erred in holding that the Bank lacked standing

---

prudential standing to assert such voidness—*in a bankruptcy proceeding*. Whether or not the Bank was a creditor in the underlying bankruptcy proceedings is irrelevant to my analysis. I only discuss bankruptcy creditors in response to the dissent's claim that recognizing the voidness of that transaction in this state-law case somehow undermines federal bankruptcy law.

to bring its quiet-title claim. Standing doctrine (both constitutional and prudential) presents a threshold question of justiciability—i.e., is the plaintiff "entitled to have the court decide the merits of the dispute[?]" *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Constitutional standing considers whether a federal court has the power to adjudicate a case, *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014), and prudential standing concerns "judicially self-imposed limits on the exercise of federal jurisdiction," *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (citation omitted). The parties here dispute only whether the Bank has prudential standing to challenge the foreclosure sale.[1]

There is no reason to impose prudential limitations on our jurisdiction in the instant case. The Bank brings its quiet-title claim under Nevada Revised Statute 40.010, which allows suit "by any person against another who claims an estate or interest in real property, adverse to the person bringing the action, for the purpose of determining such adverse claim."[2] Thus, Nevada's quiet-title statute "grants

---

[1] The Supreme Court has historically discussed the zone-of-interests test as a category of prudential standing. *See, e.g.*, *Bennett*, 520 U.S. at 162. Although one Supreme Court case directed that courts should not limit standing "merely because prudence dictates," *Lexmark*, 572 U.S. at 125–28 n.4, its most recent case addressing this issue once again blended prudential concerns with standing doctrine, *Bank of America Corp. v. City of Miami*, 137 S. Ct. 1296, 1302–03 (2017) (holding that the plaintiffs had satisfied "the 'cause-of-action' (or 'prudential standing') requirement"); *see also* Wright & Miller, 13A Fed. Prac. & Proc. Juris. § 3531.7 (3d ed. 202) (discussing enduring uncertainty about the prudential zone-of-interests test).

[2] As the majority noted, Nevada's HOA foreclosure statute was amended in 2015. 2015 Nev. Stat. 1332–49. I also refer only to the version in effect from 2013–2015.

the [Bank] the cause of action that [it] asserts," *Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296, 1302 (2017), and the Bank may pursue its claim in a federal court sitting in diversity. That is not the end of the story, however.

## II.  Automatic Bankruptcy Stay

To prevail on its quiet-title claim, the Bank must prove that its interest in the subject property is superior to the interests of the foreclosure purchaser, 732 Hardy Way Trust (Trust). *Chapman v. Deutsche Bank Nat'l Tr. Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (en banc). The rule of decision for determining where superior title lies does not arise from Nevada's quiet-title statute; the quiet-title statute merely provides a *procedural* mechanism for resolving competing title claims and does not confer any *substantive* rights to real property. *See* Nev. Rev. Stat. 40.010; *Chapman*, 302 P.3d at 318 ("A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question . . . .") (internal quotation marks and citation omitted). The substantive rules of decision for a quiet-title claim must arise from another source.

Here, the sole substantive rule on which the Bank relies is Section 362(a) of the Bankruptcy Code—the automatic bankruptcy stay. But this claim is viable only if the Bank falls within the "particular class of persons [who] has a right to sue under this substantive statute." *Lexmark*, 572 U.S. at 127 (alteration and citation omitted). To determine if the Bank can seek relief based on the automatic bankruptcy stay, we must look to the Bankruptcy Code. *See 40235 Wash. St. Corp. v. Lusardi*, 329 F.3d 1076, 1079–80 (9th Cir. 2003).

The commencement of a bankruptcy case creates a bankruptcy estate comprised of the debtor's property

interests. 11 U.S.C. § 541(a). That property is used to pay creditors' allowed claims in a process facilitated by a bankruptcy trustee who represents the estate and "acts as a fiduciary for the debtor's creditors." *Hillis Motors, Inc. v. Haw. Auto. Dealers' Ass'n*, 997 F.2d 581, 585 (9th Cir. 1993) (citing 11 U.S.C. § 323(a)). Bankruptcy is, at bottom, "a distribution system; it distributes property from the debtor to creditors so that creditors can apply such payments to the debtor's debts." 1 Collier on Bankruptcy ¶ 1.03 (16th ed. 2021). Creditors play a distinct and limited role in this system: they assert claims *for distribution from the debtor's estate*. *See* 11 U.S.C. § 101(10)(A), (B) (defining "creditor" as an "entity that has a [right to payment] against the debtor" or "against the estate"); *id.* § 101(5) (defining "claim").

It is well-established that Section 362(a)'s automatic stay provision protects debtors by providing "breathing space" from creditor harassment, *Burton v. Infinity Cap. Mgmt.*, 862 F.3d 740, 746 (9th Cir. 2017), and an opportunity for a fresh start at the conclusion of a successful bankruptcy process, *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 571 (9th Cir. 1992); *see also Burkart v. Coleman (In re Tippett)*, 542 F.3d 684, 691 (9th Cir. 2008). But that is not its only purpose. The stay also protects creditors' interests in the debtor's estate. *See, e.g.*, *Treasurer of Snohomish Cnty. v. Seattle-First Nat'l Bank (In re Glasply Marine Indus., Inc.)*, 971 F.2d 391, 394 (9th Cir. 1992) ("Congress designed the automatic stay to protect the relative position of all creditors."). That is, the automatic stay protects a creditor's ability to collect a fair return on its debt relative to the claims of other creditors *by preserving the debtor's estate*. This makes sense because without the automatic stay, creditors could "rac[e] to various courthouses to pursue independent remedies to drain the debtor's assets." *Dean v. Trans World Airlines, Inc.*, 72 F.3d 754, 755–56 (9th Cir. 1995). By

prohibiting such disorderly depletion, the automatic stay protects "creditors as a class from the possibility that one creditor will obtain payment on its claims to the detriment of all others." *Hillis*, 997 F.2d at 585; *see also City of Chicago v. Fulton*, 141 S. Ct. 585, 589 (2021) (explaining the automatic stay protects creditors "*as a group* by preventing individual creditors from pursuing their own interests *to the detriment of the others*") (emphases added).

But, important for this case, the automatic stay does not protect litigants pursuing claims that are adverse or unrelated to the distribution of the debtor's estate. This is clear from our decision in *Magnoni v. Globe Investment & Loan Co., Inc. (In re Globe)*, 867 F.2d 556, 558–60 (9th Cir. 1989), where several parties who co-owned real property with the debtor sought to set aside the foreclosure of the debtor's interest in the co-owned property as violative of the automatic stay. The co-owners were "creditors" of the debtor because they had filed proofs of claim in the debtor's bankruptcy case. *Id.* at 558 & n.4. Nonetheless, we held that they could not invoke protection from the automatic stay because they had "not pursued [their] action as [the debtor's] creditors, but rather as owners of the . . . property." *Id.* at 559. Setting aside the sale would not have benefitted the debtor's estate because the estate had received a cash payment for the value of the debtor's interest in the subject property. *Id.* at 558. In such circumstances, the co-owners were acting not as "creditors" seeking to recover from the bankruptcy estate but instead as "aggrieved property owners with interests adverse to the estate." *Id.* at 560. And we held that the automatic stay "does not confer any rights" on parties in this position. *Id.* As we explained, "[the automatic stay] is intended to protect the debtor and to assure equal distribution among creditors." *Id.* Thus, the co-owners' claim based on violation of the stay was "wholly without

merit" because it was "antagonistic to the express purpose behind [the automatic stay]." *Id.*

This case is analogous. The Bank wants the foreclosure sale declared void to preserve its lien interest in the subject property.[3] *See Chapman*, 302 P.3d at 1106. But this outcome protects the Bank's interests as an "aggrieved property owner[]." *In re Globe*, 867 F.2d at 560. Voiding the foreclosure sale does not advance or preserve the bankruptcy estate, and it has nothing to do with the Bank's "claim against the *debtor*" or "against the *estate*." 11 U.S.C. § 101(10)(A), (B) (emphases added). The Bank's failure to object to the debtor's pre-foreclosure surrender of the subject property as part of the debtor's bankruptcy plan only reinforces this conclusion. Whereas the Bank's quiet-title claim is unrelated to its role as a "creditor" and the purposes for which the automatic stay was enacted, I would reject the Bank's "disingenuous attempt to use the Bankruptcy Code [for its own] advantage." *In re Globe*, 867 F.2d at 560. The automatic stay "does not confer any rights" upon the Bank in the context of this case. *Id.*[4]

---

[3] As the majority notes, it is undisputed that the automatic stay was in effect when the foreclosure proceeding was first initiated. However, the bankruptcy court record establishes that the automatic stay had been lifted as to the subject property by the time the foreclosure sale itself occurred.

[4] The concurrence argues that the automatic stay protects the Bank because it was a "creditor" of the debtor in the underlying bankruptcy proceedings. But it fails to acknowledge that the Bank is not presently pursuing relief as a "creditor" as that term is defined for purposes of bankruptcy—i.e., an entity that has a [right to payment] against the debtor" or "against the estate." 11 U.S.C. § 101(10)(A), (B); *id.* § 101(5). Instead, the Bank is acting as a "creditor" in the general sense of that term—i.e., one "to whom a debt is owed." Black's Law Dictionary (11th

*Tilley v. Vucurevich (In re Pecan Groves)*, 951 F.2d 242 (9th Cir. 1991), further supports this conclusion. There we held that creditors (and certainly aggrieved property owners) lack standing in bankruptcy proceedings to challenge a bankruptcy court's adverse decision regarding a claimed stay violation. *Id.* at 244–46. This holding respects the principle that it is the bankruptcy trustee who "is charged with the administration of the estate for the . . . creditor's benefit." *Id.* at 245; *see also Hillis Motors*, 997 F.2d at 585 (explaining that the trustee represents the estate and "acts as a fiduciary for the debtor's creditors"). Creditors cannot "subvert the trustee's powers" by "pursu[ing] claims the trustee abandon[ed]." *In re Pecan Groves*, 951 F.2d at 245. In this case, allowing the Bank to enforce the stay outside the bankruptcy proceedings—relief that would not benefit the debtor's bankruptcy estate and that was forgone by the trustee in the bankruptcy case—would undermine the trustee's administrative role and contradict the principle expounded by *In re Pecan Groves*.[5]

The majority contends that none of the foregoing analysis matters because state law, not federal law, resolves this case. It hangs its hat on *LN Management LLC Series 5105 Portraits Place v. Green Tree Servicing LLC (Portraits Place)*, 399 P.3d 359, 360–61 (Nev. 2017), which upheld a creditor's challenge to an HOA foreclosure sale because it

---

ed. 2019). Nor does the concurrence explain why the automatic stay should protect a creditor pursuing a claim that is wholly unrelated to the distribution of the debtor's estate.

[5] I agree with the majority that *In re Pecan Groves*'s holding regarding standing in bankruptcy proceedings is inapplicable to this case.

violated the automatic stay and was therefore void.[6] This reasoning would make sense if the Bank were relying on state law for its quiet-title claim. But it's not. Thus, the question before us turns not on state law, but on federal bankruptcy law—i.e., whether the party seeking to enforce the automatic stay "fall[s] within the zone of interests protected by [11 U.S.C. § 362(a)]." *See Lexmark*, 572 U.S. at 129 (citation omitted). And although the majority relies on *Portraits Place* to answer this question, the Nevada Supreme Court's view of federal bankruptcy law and application of the automatic stay is not binding on us. *See Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 198 (1988) ("Although state law generally supplies the rules of decision in federal diversity cases, it does not control the resolution of issues governed by federal statute.") (internal citations

---

[6] The majority relies on four other cases to conclude that Nevada law controls this case. Maj. Op. 10–11. Two are unpublished Nevada Supreme Court decisions that do no more than apply *Portraits Place*. *See Gundala v. BAC Home Loans Servicing, LP*, 483 P.3d 1121, 2021 WL 1531154, at *1 (Nev. 2021) (unpublished); *NV Eagles, LLC v. Nationstar Mortg., LLC*, 462 P.3d 1230, 2020 WL 2527389, at *1 (Nev. 2020) (unpublished). The other two cases do not support the majority's conclusion. In *SFR Investments Pool 1, LLC v. U.S. Bank, N.A.*, 449 P.3d 461, 465 (Nev. 2019), the Nevada Supreme Court considered whether a foreclosure sale should be set aside on equitable grounds and held that a violation of the bankruptcy stay might indicate unfairness in the foreclosure proceedings. But here, the majority does not grant equitable relief due to evidence of "fraud, oppression, or unfairness." *See id.* Rather, it holds that the foreclosure sale is void because it violated the automatic bankruptcy stay. Finally, in *CitiMortgage, Inc. v. Corte Madera Homeowners Association*, 962 F.3d 1103, 1110–11 (9th Cir. 2020), our court said nothing about whether a creditor pursuing a claim unrelated to the debtor's estate may seek protection under the Bankruptcy Code; instead, we remanded for the district court to consider *in the first instance* whether the property was property of the debtor or the estate and whether the foreclosure notices at issue violated the bankruptcy stay.

omitted). Indeed, the Nevada Supreme Court seemingly understood this foundational principle of federalism when it applied *federal* law, including our decision in *In re Schwartz* in deciding whether a foreclosure sale conducted in violation of the automatic bankruptcy stay is void or voidable. *Portraits Place*, 399 P.3d at 360–61 (citing *In re Schwartz*, 954 F.2d at 571). In this context, the majority's assertion that state law dictates the outcome here makes no sense.

Finally, I recognize that we have held that "violations of the automatic stay are void, not voidable." *In re Schwartz*, 954 F.2d at 571.[7] But that does not necessarily mean that anyone dissatisfied with conduct it believes violated the automatic stay may claim protection under Section 362 of the Bankruptcy Code. In *In re Schwartz*, there was no question that the party seeking to enforce the automatic stay—the debtor—fell within the zone of interests protected by the automatic stay. *Id.* at 570. The Internal Revenue Service (IRS) had assessed taxes and penalties against the debtor while the automatic stay was in effect, and the debtor argued that the IRS's claim asserted in a later bankruptcy proceeding based on the IRS's prior violative assessment was void. *Id.* We agreed, noting that the automatic stay "is designed to protect debtors from all collection efforts while they attempt to regain their financial footing." *Id.* at 571. We had no occasion in *In re Schwartz* to address the question

---

[7] There is a longstanding circuit split over the void-versus-voidable distinction. *See, e.g.*, *Chapman v. Bituminous Ins. Co.*, 345 F.3d 338, 344 (5th Cir. 2003) (*In re Coho Res. Inc.*); *Bronson v. United States*, 46 F.3d 1573, 1578 (Fed. Cir. 1995); *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 909–12 (6th Cir. 1993); *see also In re Myers*, 491 F.3d 120, 127 (3d Cir. 2007) (holding that the void-not-voidable rule is not absolute because Section 362(d) of the Bankruptcy Code allows bankruptcy courts to retroactively annul the stay); *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 976 (1st Cir. 1997) (same).

presented here—whether a party that falls outside the zone of interests protected by the automatic stay or that seeks to use the stay in a manner contrary to its purposes is nonetheless entitled to enforce the stay. Thus, the majority's reliance on *In re Schwartz* (and *Portraits Place*'s application of *In re Schwartz*) puts the cart before the horse. If the Bank fell within the "particular class of persons [who] has a right to sue under [the automatic bankruptcy stay]," *Lexmark*, 572 U.S. at 127 (alteration and citation omitted), as the debtor did in *In re Schwartz*, then the void-not-voidable rule applies. But the Bank is not within such class of persons. The analysis ends there. With no right to assert Section 362(a) of the Bankruptcy Code as a basis for relief, the Bank's quiet-title claim is "wholly without merit" and must be dismissed. *In re Globe*, 867 F.2d at 560.

The concurrence argues that this reasoning upends the void-not-voidable rule. Maybe if "void" were viewed in absolute terms. But our caselaw, taken as a whole, does not apply the void-not-voidable rule in this way. If conduct violating the automatic stay were truly void ab initio, prudential standing would be immaterial—the conduct would have no legal effect as to anyone, period. More than once, however, we have applied prudential standing principles to violations of the automatic stay. *In re Globe*, 867 F.2d at 556; *In re Pecan Groves*, 951 F.2d at 242. And the majority and the concurrence fail to cite any cases where we allowed a litigant with interests unrelated to the distribution of the debtor's estate to enforce the automatic stay. *Cf. Burton*, 862 F.3d at 743–44  (claim filed to protect debtor's estate); *Dyer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1184 (9th Cir. 2003) (adversary action initiated by the bankruptcy trustee); *Lusardi*, 329 F.3d at 1078 (quiet-title proceeding initiated by the debtor).

The concurrence seeks to reconcile the contradiction in our precedent by suggesting that *In re Globe* and *In re Pecan Groves* are no longer good law because they predate *In re Schwartz* and are based on the now rejected premise that violations of the automatic stay are voidable, not void. Concurring Op. 16–18 & n.3. As already explained, *In re Schwartz* did not, and had no reason to, consider what impact the void-not-voidable rule had on our existing precedent that limits the litigants entitled to enforce the automatic stay. And there is nothing in our precedent instructing that *In re Globe* and *In re Pecan Groves* have been disavowed. *See, e.g.*, *Duckor Spradling & Metzger v. Baum Tr. (In re P.R.T.C., Inc.)*, 177 F.3d 774, 778 (9th Cir. 1999) (citing *In re Pecan Groves* for standing rule); *see also Lei v. Demas Wai Yan (In re Demas Wai Yan)*, 703 F. App'x 582, 583 (9th Cir. 2017) (applying *In re Globe* and *In re Pecan Groves*'s limitation on those who can enforce the automatic stay); *Morgal v. Nw. Title Agency, Inc.*, 201 F. App'x 486, 487 (9th Cir. 2006) (same); *Schneider v. San Bernardino Cnty.*, 33 F.3d 59, 1994 WL 441779, at *3 (9th Cir. Aug. 15, 1994) (unpublished) (same).

Finally, I note that the result of the majority's decision is to allow litigants asserting a state-law claim that seeks to enforce the automatic bankruptcy stay to obtain relief that they cannot get directly under the Bankruptcy Code in bankruptcy court. This is a peculiar state of affairs, and the majority and the concurrence fail to explain why we should allow such maneuvering.

For these reasons, I respectfully dissent.