**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

ENTERPRISE MANAGEMENT
LIMITED, INC.; MARY LIPPITT,
Doctor,

*Plaintiffs-Appellants*,

v.

CONSTRUX SOFTWARE
BUILDERS, INC.; STEVE C.
MCCONNELL,

*Defendants-Appellees*.

No. 22-35345

D.C. No. 2:19-cv-
01458-DWC

OPINION

Appeal from the United States District Court
for the Western District of Washington
David W. Christel, Magistrate Judge, Presiding

Argued and Submitted May 8, 2023
Seattle, Washington

Filed July 17, 2023

Before: William A. Fletcher, Richard R. Clifton, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta

# SUMMARY*

## Copyright

The panel reversed the district court's partial grant of summary judgment in favor of defendants, vacated a jury verdict, vacated an award of attorneys' fees, and remanded an action alleging infringement of copyrights in two charts depicting organizational change.

The district court granted partial summary judgment on a claim of infringement of plaintiff's "Managing Complex Change" chart, on the ground that plaintiff failed to show that this chart was registered with the Copyright Office.

The panel held that plaintiff raised a genuine dispute whether she registered the chart directly or whether she registered elements of that chart by later registering an "Aligning for Success" chart. Agreeing with other circuits on a matter of first impression, the panel held that by registering a derivative work, an author registers all of the material included in the derivative work, including that which previously appeared in an unregistered, original work created by the author. The panel therefore reversed the district court's grant of summary judgment, and also vacated the jury verdict because, as a result of the grant of summary judgment, the district court prevented plaintiff from introducing any evidence and making any argument as to the Managing Complex Change chart at trial.

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel further held that the district court erred in instructing the jury that if it found that defendant accessed and copied other work but did not copy the registered Aligning for Success chart, then defendant's challenged work was an independent creation. The panel held that an author of an original work is entitled to sue a third party who makes an unauthorized copy of a derivative work to the extent that the material copied derived from the underlying work. The instruction incorrectly stated Ninth Circuit law because it prevented the jury from finding that defendant copied the Aligning for Success chart if he copied work that itself copied the Aligning for Success chart.

## COUNSEL

Benjamin J. Hodges (argued) and Kelly Mennemeier, Foster Garvey PC, Seattle, Washington, for Plaintiffs-Appellants.

Lawrence D. Graham (argued), Lowe Graham Jones PLLC, Seattle, Washington, for Defendants-Appellees.

## OPINION

IKUTA, Circuit Judge:

Mary Lippitt claims Steve McConnell infringed her copyrights in two charts depicting organizational change. The key question before us is whether the copyright in one of those charts was registered with the Copyright Office, such that it will support a suit for copyright infringement. We hold that Lippitt created a genuine issue of material fact

on that question.   We also hold, as a matter of first impression, that by registering a derivative work, an author registers all of the material included in the derivative work, including that which previously appeared in an unregistered, original work created by the author.   Accordingly, we reverse, vacate, and remand.

I

A

Doctor Mary Lippitt and her company, Enterprise Management Ltd., have built a career advising organizations on how to accomplish organizational change.[1] During her more than 40 years in this field, Lippitt developed a substantial array of material for multi-day presentations and consulting activities on the topic of organizational change. According to Lippitt, she distilled the essence of her work into a one-page chart that graphically shows the components necessary to accomplish organizational change and demonstrates that organizational change will fail if any of the components are missing.

The first version of this chart was entitled "Managing Complex Change."   The chart includes six columns and six rows of text boxes connected by arrows depicting cause and effect.   The top row first lists the five essential components: "Vision"; "Skills"; "Incentives"; "Resources"; and "Action Plan."   The sixth column has the word "Change," indicating that with all five components, successful organizational change is possible.   The five lower rows all have one

---

[1] We refer to Lippitt and Enterprise individually, where appropriate, or collectively as "Lippitt."

component missing, and the sixth column explains what happens when that component is absent.[2]



MANAGING COMPLEX CHANGE

Vision → Skills → Incentives → Resources → Action Plan → Change

Skills → Incentives → Resources → Action Plan → Confusion

Vision → Incentives → Resources → Action Plan → Anxiety

Vision → Skills → Resources → Action Plan → Gradual Change

Vision → Skills → Incentives → Action Plan → Frustration

Vision → Skills → Incentives → Resources → False Starts

According to her sworn declaration and deposition testimony, Lippitt included this chart in a collection of presentation materials entitled "Transition: Accomplishing Organization Change," which she submitted to the Copyright Office in 1987. The Register of Copyright (Register) registered this material and issued a Registration Certificate, No. TX 2-124-202 (the 202 registration

---

[2] The second row is missing "Vision," resulting in "Confusion." The third row is missing "Skills," resulting in "Anxiety." The fourth row is missing "Incentives," resulting in "Gradual Change." The fifth row is missing "Resources" resulting in "Frustration." And the sixth row is missing "Action Plan," resulting in "False Starts."

certificate).  The Copyright Office subsequently destroyed the deposit copy corresponding to the 202 registration certificate pursuant to its routine practice.  *See* 17 U.S.C. § 704(d).  Lippitt also did not save a copy of the "Transition: Accomplishing Organization Change" presentation materials.

Lippitt's Managing Complex Change chart apparently struck a chord with experts on organizational change, because versions of the chart were subsequently used by other speakers in this field.  For instance, Dr. Tim Knoster, a special education expert, presented a virtually identical chart entitled "Managing Complex Change" at an educational conference in 1991 and later included it in his book.  Knoster obtained a copy of the chart from a colleague who saw it at a professional development presentation.  The presenters credited Dr. Delorese Ambrose with creating the chart in 1987.

Lippitt continued to use and refine her Managing Complex Change chart.  In 2000, she developed a chart entitled "Aligning for Success" as part of a presentation entitled "Leadership Spectrum: Targeting Results."  Like the Managing Complex Change chart, the Aligning for Success chart had six rows and six columns showing the necessary components for change.  The chart made some word choice changes, such as substituting "Capabilities" for "Skills" in the second column, "Success" for "Change" in the sixth column, and "Restraint; Resistance" for "Gradual Change" in the sixth column.  It also made minor stylistic changes.[3]

---

[3] Stylistically, the Aligning for Success chart displays the words in the first five columns in circles instead of boxes as in the Managing Complex Change chart.  Also, a line runs down the middle of the chart in the place of blanks for the missing components.  Instead of arrows, the entries in



Lippitt submitted the "Leadership Spectrum" presentation materials, along with the Aligning for Success chart, to the Copyright Office in 2000. The Register registered this material and issued a Registration Certificate, No. TXu 956-226 (the 226 registration certificate). On the 226 registration certificate, Lippitt checked the box "No" in the "Previous Registration" section, which asks "[h]as registration for this work, or for an earlier version of this work, already been made in the Copyright Office?" Lippitt also left blank the section asking the applicant to "[i]dentify

---

the first five columns are connected by "+" and connected to the final column with "=".

any preexisting work or works that this work is based on or incorporates."

Lippitt submitted an identical Aligning for Success chart to the Copyright Office in 2003, as part of presentation materials called "Leading Complex Change: A Five Component Framework for Success."  The Register issued a Registration Certificate, No. TX 5-827-350 (the 350 registration certificate).  In this registration certification, Lippitt checked the "Yes" box in the "Previous Registration" section, representing that the work had already been registered with the Copyright Office, and stated that the work was a derivative work, based on "[the] manual Transition Accomplishing Organization Change."   In response to the request to "[g]ive a brief, general statement of the material that has been added to this work and in which copyright is claimed," the 350 registration certificate stated that there was a "[n]ew chart on how the positive reaction to change is visual in an organization added to the last page. New explanations added."

## B

In 2016, Steve McConnell, the CEO and chief software engineer of Construx, prepared a YouTube video about "how to be successful in applying agile practices."  The video incorporated a chart McConnell created based on a chart that he had seen in 2013 in a presentation by the Auburn School District.  The Auburn School District's presentation attributed the chart to Knoster's 1991 presentation.  The presentation further noted that Knoster adapted his chart "from Enterprise Group Ltd."  The McConnell chart, which he entitled "Lippitt/Knoster Change Model," was similar to the Aligning for Success chart. McConnell's most significant change was to add a new

second column titled "Consensus" and new third row with the "Consensus" component missing, resulting in "Sabotage." The McConnell chart also changed a few words in the final results column. Where the sixth column of the Aligning for Success chart uses the words "Success" in the first row, "Restraint; Resistance" in the fourth row, and "False Starts" in the sixth row, the seventh column of the McConnell chart used the words "Change" in the first row, "Resistance" in the sixth row, and "Treadmill" in the seventh row, respectively, just as in the Auburn School District chart. Stylistically, the McConnell chart has different spacing, font sizes, and colors. McConnell subsequently used his chart in his book, "More Effective Agile: A Roadmap for Software Leaders," and in business presentations.[4]



---

[4] The version of the chart depicted in this opinion is featured in one of McConnell's presentations.

C

After Lippitt learned about the McConnell chart, her attorney sent a cease-and-desist letter to McConnell. After McConnell refused to stop using the chart, she brought a copyright infringement action against McConnell and Construx (collectively, McConnell) for infringement of both the Managing Complex Change chart and Aligning for Success chart. Following discovery, McConnell moved for summary judgment, which the district court granted in part and denied in part. The district court first ruled that Lippitt failed to show that she had registered the Managing Complex Change chart because she did not present evidence that the chart was included in the "Transition: Accomplishing Organization Change" material registered by the 202 registration certificate. Therefore, the district court granted summary judgment in McConnell's favor with respect to Lippitt's claim that McConnell infringed the Managing Complex Change chart. The district court also denied the motion for summary judgment with respect to Lippitt's claim that McConnell infringed the Aligning for Success chart because Lippitt created a genuine issue of material fact as to whether McConnell had copied it. Based on this ruling, the district court issued a pretrial order precluding Lippitt from basing any argument on her alleged ownership of the copyright in the Managing Complex Change chart, including any argument that McConnell infringed the Aligning for Success chart by copying elements from the Managing Complex Change chart.

At trial, Lippitt argued that McConnell infringed her Aligning for Success chart by copying the chart presented by the Auburn School District. McConnell argued that this evidence did not show that he had copied the Aligning for Success chart—the only infringement claim before the

jury—because the Auburn School District chart was attributed to Knoster's 1991 chart, and Lippitt had not created the Aligning for Success chart until 2003. Following closing arguments, the district court provided the following jury instruction over Lippitt's objection:

> There is no copyright infringement when Defendant shows they independently created the challenged work, meaning that the challenged work was created by drawing from other work without copying the registered work. If you find the evidence shows Defendants accessed and copied other work but did not copy the registered work then the challenged work is an independent creation. . . . If you find Defendants independently created the challenged work, your verdict should be for Defendants.

The jury returned a verdict for McConnell, and the district court granted McConnell's motion for attorneys' fees. Lippitt timely appealed.

We have jurisdiction under 28 U.S.C. § 1291. *See Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 793–94 (9th Cir. 2007). We review de novo the grant of summary judgment, *see Bank of N.Y. Mellon v. Enchantment at Sunset Bay Condo. Ass'n*, 2 F.4th 1229, 1231 (9th Cir. 2021), and whether a jury instruction accurately stated the law, *see Unicolors, Inc. v. H&M Hennes & Mauritz, L.P. (Unicolors II)*, 52 F.4th 1054, 1063–64 (9th Cir. 2022).

II

A

We first consider whether Lippitt raised a genuine issue of material fact that she registered the Managing Complex Change chart by including it in the material corresponding to the 202 registration certificate. Although the only evidence supporting this claim was Lippitt's declaration and deposition, such evidence may be sufficient if it is "based on personal knowledge, legally relevant, and internally consistent" and did not "state[] only conclusions." *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497–98 (9th Cir. 2015); *cf. CFPB v. Gordon*, 819 F.3d 1179, 1194 (9th Cir. 2016) (holding that a party's declaration did not create a genuine issue of material fact because it "lack[ed] detailed facts and any supporting evidence" and "contradict[ed] . . . prior statements" (citation and quotation marks omitted)).

Lippitt's testimony meets these requirements. Lippitt's declaration, based on her personal knowledge, states that "[t]he 202 Registration was a copy of presentation material" that Lippitt created to use for a multi-day training "program on organizational change concepts," and the Managing Complex Change chart "formed a crucial part of the program." Lippitt's statements in her deposition were consistent with her declaration; she testified that the presentation included her work on organizational change and the Managing Complex Change chart. When asked whether the presentation, which included the Managing Complex Change chart, was "the material that [she] submitted to the copyright office along with the registration form for the 202 registration," Lippitt answered "Yes."

Further, both Lippitt's declaration and deposition provided detailed facts supporting her assertion. The

declaration explained that the Managing Complex Change chart's "prominence in [Lippitt's] teaching also supports [her] unwavering recollection that the chart was part of the" presentation submitted to the Copyright Office and registered by the 202 registration certificate. And in her deposition testimony, Lippitt stated that the presentation was approximately 30 pages long and "was handed out in a three-ring binder with a colored cover and black and white pages." She testified that other than the chart, the presentation included "[d]escriptions of the different factors under each part of the chart," as well as "exercises for people to think about a successful change" and "unsuccessful changes."

These detailed and consistent factual statements were sufficient to establish a genuine issue of material fact whether the 202 registration certificate registered the Managing Complex Change chart. *See Williams v. Gaye*, 895 F.3d 1106, 1124, 1126 (9th Cir. 2018) (holding that "what was in the deposit copy was a factual dispute for the jury to decide," as was "[t]he question of whose interpretation of the deposit copy to credit"). The district court erred in holding otherwise.

## B

Lippitt also argues that she raised a genuine issue of material fact that she registered the elements of the Managing Complex Change chart that were included in the Aligning for Success chart, which was registered pursuant to the 226 registration certificate and the 350 registration certificate.[5] This argument is not redundant because even if

---

[5] Lippitt preserved this argument by alleging in her complaint that the Managing Complex Change chart was registered and that the Aligning for Success chart was derived from the Managing Complex Change chart, and raising the argument before the district court at the motion in

the jury ultimately determines at trial that Lippitt did not register the Managing Complex Change chart in the 220 registration certificate, she could prevail on this alternative theory.[6]

1

To address this argument, we must first determine whether a copyright owner who creates an original work (but does not register it) and subsequently registers a derivative work based on that original work registers the elements in the original work that are included in the derivative work. This is an issue of first impression in our Circuit. Given the flexible nature of registration, we conclude that registration of a derivative work registers such elements.

The owner of an original work has a copyright "immediately upon the work's creation." *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887 (2019) (citing 17 U.S.C. § 106). If the owner of an original work prepares a derivative work—"a work based upon one or more preexisting works that recasts, transforms, or adapts the preexisting work," *DC Comics v. Towle*, 802 F.3d 1012, 1023 (9th Cir. 2015) (citation and quotation marks omitted)—the owner has a copyright in both the original

---

limine stage. Lippitt was not required to plead this specific legal theory in the complaint in order to preserve it. *See Elec. Constr. & Maint. Co. v. Maeda Pac. Corp.*, 764 F.2d 619, 622 (9th Cir. 1985) ("A party does not need to plead specific legal theories in the complaint, as long as the opposing party receives notice as to what is at issue in the lawsuit.").

[6] The jury's determination as to which registration certificate registered the Managing Complex Change chart may limit the remedies available to Lippitt, as she is entitled to statutory damages and attorneys' fees only to the extent infringement occurred after the work was registered. *See* 17 U.S.C. § 412.

elements and all derivative elements. *See* 17 U.S.C. § 106(2) (stating that the copyright owner "has the exclusive right[] to . . . prepare derivative works based upon [the owner's] copyrighted work"); *DC Comics*, 802 F.3d at 1023 (recognizing that the owner of the original work "retains a copyright in that derivative work with respect to all of the elements that the derivative creator drew from the underlying work and employed in the derivative work").

The Copyright Act's registration requirement does not impose a heavy burden on the copyright owner. *See Fourth Est.*, 139 S. Ct. at 887 (noting that the registration requirement "is akin to an administrative exhaustion requirement"). A work can be registered at any time during the term of copyright and any extension of that term. *See* 17 U.S.C. § 408(a). There are disadvantages to delaying registration, however. If a certificate of registration is issued "before or within five years after first publication of the work[, it] shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." *Id.* § 410(c). But if the certification of registration is issued more than five years after first publication, "[t]he evidentiary weight to be accorded [to] the certificate of a registration . . . shall be within the discretion of the court." *Id.* In addition, certain remedies may be limited for infringement prior to registration. *See id.* § 412; *supra* at p.14, n.6.

Nor is the registration procedure burdensome. "To obtain registration, the author of a work must submit to the Register of Copyrights a copy of the work and an application." *Unicolors, Inc. v. H&M Hennes & Mauritz, L. P. (Unicolors I)*, 142 S. Ct. 941, 945 (2022) (citing 17 U.S.C. §§ 408, 409). After examining the application and the work, if the Register "determines that . . . the material deposited constitutes copyrightable subject matter and that the other

legal and formal requirements" are satisfied, "the Register shall register the claim and issue to the applicant a certificate of registration."  17 U.S.C. § 410(a).

Because the owner can register the original work at any time and the registration applies to all "the material deposited [that] constitutes copyrightable subject matter," *id*., we conclude that when a derivative work includes copyrightable elements of the unregistered original work, the owner's registration of the derivative work also registers the included elements of the original work.

All circuits that have addressed this issue agree with this conclusion.  In the leading case of *Streetwise Maps*, the owner of a copyright in a New York street map registered a second street map that was derived from that original map and added "depictions of the subway and bus systems." *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 741, 746 (2d Cir. 1998).  Later, the owner of the copyright sued a third party for infringing its copyright in the original map. *See id.* at 742.  The defendant argued that, first, the owner could not bring the suit because it had not registered the original map and, second, the registration for the derivative map registered only those elements that had not been included in the original.  *See id.* at 746–47.  The Second Circuit rejected this argument.  *See id.* at 747.  It held that where an owner holds the copyright in both the derivative and original work, "the registration certificate relating to the derivative work in this circumstance will suffice to permit it to maintain an action for infringement based on defendants' infringement of the pre-existing work."  *Id.*; *see also* 2 Nimmer on Copyright § 7.16[B][5][c] (2023) ("[W]hen the same party owns the derivative . . . work plus the underlying elements incorporated therein, its registration of the former is sufficient to permit an infringement action on the

underlying parts, whether they be new or preexisting."
(citation and quotation marks omitted)); *R.W. Beck, Inc. v.
E3 Consulting, LLC*, 577 F.3d 1133, 1143 (10th Cir. 2009)
("[I]f the same party owns a copyright in both a derivative
work . . . and the underlying work that is incorporated in the
derivative work, registration of a copyright in the derivative
work is sufficient to permit an infringement action on either
preexisting . . . material or on any newly contributed
material."); *Christopher Phelps & Assocs., LLC v.
Galloway*, 492 F.3d 532, 539 (4th Cir. 2007) (holding that a
copyright owner's registration of a derivative work also
registered the elements of the owner's original work that
appeared in the derivative work).[7]

2

Applying this analysis here, we hold that Lippitt can
argue that she registered the elements of the Managing
Complex Change chart that were included in the Aligning
for Success chart. McConnell did not create a disputed
material fact as to Lippitt's authorship of the Managing
Complex Change chart, and the parties agree that Lippitt is
the author of the Aligning for Success chart. Nor do the
parties dispute that the Aligning for Success chart is a
derivative work of the Managing Complex Change chart or
that elements of the Managing Complex Change chart are
included in the Aligning for Success chart. Therefore, the
registration certificates for the Aligning for Success chart
(the 226 registration certificate and the 350 registration

---

[7] Nevertheless, registering the derivative work will not register elements
of the original work that were not included in the derivative work. *See
Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1231 (11th
Cir. 2008).

certificate) permit Lippitt to bring an action for infringement of the aspects of the Managing Complex Change chart that were included in the Aligning for Success chart. *See Streetwise*, 159 F.3d at 747.

McConnell argues that the registrations for the Aligning for Success chart could not have registered the Managing Complex Change chart because the registration certificates do not expressly refer to the Managing Complex Change chart. Further, he argues, the registration for the 226 registration certificate is inconsistent with Lippitt's arguments because it expressly states that registration for the Aligning for Success chart or an earlier version of that chart had not been previously made to the Copyright Office, and it does not indicate that the work is a derivative work.

We disagree. "[T]he Copyright Act provides a safe harbor" for inaccurate information in a registration certificate. *Unicolors I*, 142 S. Ct. at 945. A certificate of registration is valid even if it contains "any inaccurate information, unless" the copyright registration applicant included the information "with knowledge that it was inaccurate" and "the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(1). Thus, "[l]ack of knowledge of either fact or law can excuse an inaccuracy in a copyright registration." *Unicolors I*, 142 S. Ct. at 945. And, with respect to the second element, "the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(2).

McConnell does not argue, nor does the record show, that Lippitt knowingly omitted information about

preexisting works or that information about preexisting works was material. *See* 2 Nimmer on Copyright § 7.20[B][1] (2023) ("In general, failure to disclose that the registered work is derivative of an earlier, underlying work should occasion rejection of the registration certificate only if the claimant was for some reason ineligible to register the derivative work."). Therefore, Lippitt created a genuine issue of material fact that elements of the Managing Complex Change chart that were included in the Aligning for Success chart were registered either by the 226 registration certificate or the 350 registration certificate.

Even if Lippitt is not entitled to the safe harbor for inaccurate information in the 226 registration certificate, the 350 registration certificate accurately stated that it registered a derivative work of the manual titled "Transition Accomplishing Organizational Change," which, according to Lippitt's declaration, was the title of the presentation that included the Managing Complex Change chart and was created in 1987. The 350 registration certificate also states that a "previous or alternative title[]" of the registered work was "Managing Complex Change," the same title as the Managing Complex Change chart. This evidence creates a genuine issue of material fact whether Lippitt registered elements of the Managing Complex Change chart when she subsequently registered the Aligning for Success chart under the 350 registration certificate.

3

Because Lippitt raised a genuine dispute whether she registered the Managing Complex Change chart directly (in the 202 registration certificate) or whether she registered elements of that chart by registering the Aligning for Success chart (in the 226 registration certificate or the 350

registration certificate), we reverse the grant of summary judgment for McConnell.[8]  We therefore also vacate the jury verdict for McConnell because, as a result of the grant of summary judgment, the district court prevented Lippitt from introducing any evidence and making any argument as to the Managing Complex Change chart at trial.[9]

## III

Finally, we consider Lippitt's challenge to the jury instruction stating that if the jury found that McConnell "accessed and copied other work but did not copy the registered work then the challenged work is an independent creation," and the jury's verdict should be for McConnell.[10]

---

[8] Our conclusion is consistent with the Tenth Circuit's resolution of a separate but similar copyright infringement suit brought by Lippitt.  *See Enter. Mgmt. Ltd. v. Warrick*, 717 F.3d 1112 (10th Cir. 2013).  In that case, the Tenth Circuit reversed a grant of summary judgment for the defendant, holding that Lippitt presented a genuine issue of material fact that the Managing Complex Change chart was registered both because "Lippitt testified at her deposition that the [Managing Complex Change chart] was first included in materials registered in 1987," in the 202 registration certificate, and because the 226 registration certificate and 350 registration certificate registered the Managing Complex Change chart as a preexisting work that was included in the Aligning for Success chart.  *Id.* at 1120 & n.8, 1121.

[9] Because we reverse the grant of summary judgment and vacate the jury verdict, we also vacate the award of attorneys' fees to McConnell.  *See* 17 U.S.C. § 505 (stating that a court may award "attorney's fee[s] to the prevailing party" in a copyright infringement action).

[10] Lippitt also argues that the district court erred in issuing a supplemental jury instruction that "[t]he Auburn School District chart . . . was not derived from the Aligning for Success Chart."  We reject this argument because Lippitt produced no evidence at trial that the creators of this chart accessed the Aligning for Success chart either directly or through widespread dissemination.  *See Rentmeester v. Nike, Inc.*, 883

We conclude that this instruction is incorrect. Under our precedent, if elements in an original work were copied by an infringing work, and the defendant copies those elements as set forth in the infringing work, the defendant's copy infringes the original work. *See DC Comics*, 802 F.3d at 1024 (holding that "if the material copied was derived from a copyrighted underlying work, this will constitute an infringement of such work regardless of whether the defendant copied directly from the underlying work, or indirectly via the derivative work" (quoting 1 Nimmer on Copyright § 3.05 (Matthew Bender, Rev. Ed.))). Therefore, the author of the original work "is entitled to sue a third party who makes an unauthorized copy of [a] . . . derivative work to the extent that the material copied derived from the underlying work." *Id.*

Under this framework, Lippitt can sue McConnell for copying elements of the chart presented by the Auburn School District to the extent that the Auburn School District chart infringed on elements of the Aligning For Success chart and McConnell copied those elements. However, the jury instruction directed that so long as McConnell "did not copy" the Aligning for Success chart directly, then his chart was "an independent creation" even if McConnell copied elements from the Auburn School District chart that were derived from the Aligning For Success chart. This incorrectly stated our Circuit's law because the instruction prevented the jury from finding that McConnell copied the Aligning for Success chart if McConnell copied work that

F.3d 1111, 1116–17 (9th Cir. 2018), *overruled on other grounds by Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) (en banc) (stating direct and circumstantial evidence requirements for a copyright infringement claim).

itself copied the Aligning For Success chart. *See id.* This error was not harmless because it allowed the jury to find in favor of McConnell even if his chart infringed Lippitt's copyright in the Aligning for Success chart. *See id.*

**REVERSED, VACATED, AND REMANDED.**[11]

---

[11] Costs shall be taxed against Defendants-Appellees, Construx and McConnell.